IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| MARK AND AMBER FESSLER, | § | Civil Action File No. |
| ANDREW HOCKER, KEVIN REUSS, | § | 4:19-cv-00248 |
| MATTHEW CARRERAS, CHARLES AND | § | |
| MICHELLE HANDLY, AARON AND | § | Hon. Judge Amos Mazzant/ |
| STACEY STONE, and DANIEL AND | § | Hon. Magistrate Judge Priest-Johnson |
| SHARON SOUSA, on Behalf of Themselves and | § | |
| Those Similarly Situated | § | PLAINTIFFS' FEE AND EXPENSE |
| *Plaintiffs* | § | APPLICATION |
| | § | |
| v. | § | |
| | § | |
| PORCELANA CORONA DE MÉXICO, S.A. | § | |
| DE C.V f/k/a SANITARIOS LAMOSA S.A. | § | |
| DE C.V. a/k/a Vortens | § | |
| *Defendant.* | § | |

**PLAINTIFFS' MOTION FOR APPROVAL OF SERVICE AWARDS, AWARD
OF ATTORNEYS' FEES AND REQUEST FOR REIMBURSEMENT OF
LITIGATION EXPENSES AND BRIEF IN SUPPORT THEREOF**

COMES NOW Plaintiffs, by their undersigned counsel, and seek this Honorable Court's Order approving payment of attorneys' fees and expenses for the successful work done and outstanding result obtained in this case.  Class counsel has succeeded in obtaining significant cash benefits for aggrieved consumers, establishment of a defined replacement program at no cost to the product owner, and additional non-cash warranty extension benefits affecting hundreds of thousands of tank product (the "Settlement") for the benefit of the Class in settlement of the above-captioned action (the "Action"); therefore, in support of this Motion, Plaintiffs respectfully submit that the requested attorneys' fees and reimbursement of costs and expenses are fair and reasonable under the applicable standards and should, therefore, be awarded by the Court as follows:

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL........................................................... i

TABLE OF CONTENTS ................................................................................... ii

TABLE OF AUTHORITES ............................................................................... iv

SUMMARY OF THE SETTLMENT AND APPLICATION ............................ 1

AUTHORITY AND ANALYSIS ....................................................................... 2

I.    THE COURT SHOULD APPROVE THE SERVICE AWARD OF $7500 FOR EACH
      CLASS REPRESENTATIVE ............................................................................ 2

II.   CLASS COUNSEL'S ATTORNEY'S FEES, EXPENSES AND COSTS ARE
      REASONABLE AND CONSISTENT WITH THIS DISTRICT AND FIFTH CIRCUIT
      PRECEDENT ....................................................................................................... 3

      A.    Standard of Review and Scope of Consideration ........................... 4

      B.    Fees Under the "Lodestar Method" Are Justified ......................... 4

            1.    The Number of Hours Spent Is Reasonable – Class Counsel
                  Provided Years of Work with no Guarantee of Payment ................. 5

            2.    Prevailing Market Rates in the Community Establish the
                  Hourly Rates Billed herein are Reasonable ..................................... 7

      C.    Enhancement of Class Counsel's Lodestar Fee is Well-Deserved .............. 9

            1.    Factor One: Time and labor required ............................................... 10

            2.    Factor Two: Novelty and difficulty of the questions ....................... 10

            3.    Factors Three and Nine: Skill required to perform the legal
                  service properly: Experience, reputation and ability of the
                  attorneys ................................................................................................ 11

            4.    Factor Four: Preclusion of other employment. .............................. 11

            5.    Factor Five: Customary fee ............................................................... 12

6.      *Factor Six and Ten: Fixed or Contingent Fee; Undesirability of the action* ................................................................................ 12

7.      *Factors Seven and Eleven: Time limitations; Nature and length of the professional relationship with the client* ............................... 13

8.      *Factor Eight: Amount involved and the results obtained* ............... 13

9.      *Factor Twelve: "similar cases"* ........................................................ 14

D.      <u>Counsel Should be Awarded Their Costs and Expenses</u> ............................ 14

CONCLUSION ............................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*,
  2019 WL 387409 (S.D. Tex. 2019)...................................................................... 2-3

*Allen v. U.S. Steel Corp.*,
  665 F.2d 689 (5th Cir. 1982) .............................................................................. 8, 11

*Billitteri v. Sec. Am., Inc.*,
  2011 WL 3585983 (N.D. Tex. 2011)........................................................................ 4

*Buettgen v. Harless*,
  2013 WL  12303194, at *3 (N.D.  Tex.  2013)......................................................... 12

*Ceats, Inc. v. TicketNetwork, Inc.*,
  2019 WL 1857888 (E.D. Tex. 2019) ....................................................................... 9

*City of San Antonio, Texas v. Hotels.com, L.P.*,
  2017 WL 1382553, at *5 (W.D. Tex. 2017).......................................................4, 8, 14

*DeHoyos v. Allstate Corp.*,
  240 F.R.D. 269 (W.D. Tex.2007).................................................................... 2, 9, 15

*Di Giacomo v. Plains All Am. Pipeline*,
  2001 WL 34633373 (S.D. Tex. 2001) ..................................................................... 14

*Duncan v. JPMorgan Chase Bank, N.A.*,
  2016 WL 4419472, (W.D. Tex. 2016), *report and recommendation adopted*,
  2016 WL 4411551 (W.D. Tex. 2016)........................................................................ 2

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  2018 WL 1942227 (N.D. Tex. 2018)................................................................. 12, 14

*Forbush v. J.C. Penny Co.*,
  98 F. 3d 817 (5th Cir. 1996)................................................................................. 4, 9

*Grant v. Martinez*,
  973 F.2d 96 (2d Cir. 1992), cert. denied, 506 U.S. 1053 (1993) ........................... 5, 15

*Halleen v. Belk, Inc.*,
  2018 WL 6701278 (E.D. Tex. 2018) ....................................................................... 2

*Hensley* v. *Eckerhart*,
   461 U.S. 424 (1983), ................................................................................ 4, 7

*In re Dell Inc.*,
   2010 WL 2371834 (W.D. Tex. June 11, 2010)
   *aff'd, appeal dismissed sub nom*, 669 F.3d 632 (5th Cir. 2012) ............................. 14

*In re Enron Corp. Securities, Derivative & ERISA Litig.*,
   586 F. Supp. 2d 732 (S.D. Tex. 2008) ..................................................... 14

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
   851 F.Supp. 2d 1040 (S.D. Tex. 2012) .................................................... 7

*Johnson v. Georgia Highway Express*,
   488 F.2d 714 (5th Cir. 1974) ..............................................................*passim*

*Klein el al. v. O'Neal, Inc. et al.*,
   705 F.Supp. 2d 632 (N.D. Tex. Apr. 9, 2010) ............................................ 9

*LeBlanc-Sternberg v. Fletcher*,
   143 F.3d 748, 764 (2d Cir. 1998).......................................................... 8

*OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*,
   2015 WL 5021954 (S.D. Tex. Aug. 24, 2015) .................................... 12, 13

*Mills v. Electric Auto-Ute Co.*,
   396 U.S. 375 (1970)....................................................................... 14

*NSEW Holdings LLC v. Wells Fargo Bank, N.A.*,
   2017 WL 1030313, at *6–7 (E.D. Tex. 2017) (Mazzant, J.) ...................... 10

*Pruett v. Harris Cty. Bail Bond Bd.*,
   F. Supp. 2d 944 (S.D. Tex. 2008) ....................................................... 7

*Rappaport v. State Farm Lloyds*,
   2001 WL 1467357 (5th Cir. 2001) (per curiam)...................................... 4

*Rutherford v. Harris Cty., Tex.*,
   197 F.3d 173 (5th Cir. 1999) ............................................................. 9

*Schwartz v. TXU Corp.*,
   2005 WL 3148350 (N.D. Tex. 2005)..................................................... 11

*Shaw v. Toshiba Am. Info. Sys., Inc.*,
    91 F. Supp. 2d 942 (E.D. Tex. 2000) ............................................................. 3, 10, 13

*Sierra Club v. Energy Future Holdings Corp*,
    2014 WL 12690022 (W.D. Tex. 2014) ........................................................... 7

*Strong v. Bell South Telecommunications, Inc.*
    137 F. 3d at 844 (5th Cir. 1998) .................................................................... 4

*Tex. Commerce Bank Nat'l Ass'n v. Capital Bancshares, Inc.*,
    907 F.2d 1571 (5th Cir. 1990) ...................................................................... 4

*Union Asset Management Holding, A.G. v. Dell*,
    669 F3d 632 (5th Cir. 2012) .......................................................................... 9

## **Rules and Statutes**                                                      **Page(s)**

Fed.R.Civ.P. 23(h) ........................................................................................... 3

## SUMMARY OF THE SETTLEMENT AND APPLICATION

After years of hard-fought litigation, voluminous discovery, and extensive arms' length negotiations, the Parties reached a Settlement that provides substantial, real and immediate class benefits:[1] (1) $150 cash reimbursement per replaced Class Tank by sworn declaration, *or* (2) $300 cash reimbursement per Class Tank with proof of out-of-pocket expenses;[2] and (3) 100% cash reimbursement up to $4,000 for property damage expenses.  Class Members owning a Class Tank that do not elect replacement within the Claim Period are still afforded a significant benefit under the Settlement – an extension of the original one-year Class Tank warranty (which otherwise expired in 2012) to December 31, 2021.  The Settlement also contains a negotiated advantage for owners that previously waived warranty protection - past executed releases requiring a waiver of warranty for replacement tanks are modified to include a product warranty enforceable for five years from the date of the executed release.  [APPX C; D; E].  Through the appointment of a third-party administrator and the enforcement authority of this Court, the Settlement also provides an additional needed layer of oversight in the administration of this relief, without any cost to the Class [APPX C].  Due to the dedicated participation of the individual Plaintiffs and Class Counsel's vigorous, persistent, and skilled efforts, the Settlement stands as an exceptional recovery in the face of substantial risk. The Settlement includes Porcelana's agreement to separately pay awards of $7,500 to each Representative Handley and Representative Reuss and to further reimburse Class Counsel for reasonable expenses incurred not to exceed $500,000.  In consideration of the

---

[1]     The Settlement provides a remedy for hundreds of thousands of toilet tanks (models #3412 and #3464) manufactured in 2011, hereinafter described as the "Class Tanks."

[2]     In addition to the cash benefits and warranty extensions, the Settlement creates a replacement program option for Class Members residing in areas designated as 2011 high distribution locations to receive installation of Porcelana's replacement tank product at no cost.

extensive efforts and exceptional results achieved for the Settlement Class, Class Counsel hereby apply for approval of the agreed awards for the class representatives, a fee award of **Twelve Million Dollars ($12,000,000),** and reimbursement of litigation expenses in the amount of $372,105.77, all of which were reasonably and necessarily incurred in prosecuting and resolving the Action.

## AUTHORITY AND ANALYSIS

The Settlement was the result of extensive litigation, thousands of expended hours in written discovery, international depositions, review of tens of thousands of documents (many of which were produced only in Spanish), attending manufacturing plant inspections in both Benito Juarez, Mexico and Monterrey, Mexico, and protracted settlement negotiations conducted at arms' length, all occurring with significant risk to the putative class and Class Counsel.[3]

## I.   THE COURT SHOULD APPROVE THE SERVICE AWARD OF $7500 FOR EACH CLASS REPRESENTATIVE

Service or incentive payments recognize the time, effort and risks class representatives undertake on behalf of a class. In addition to compensating them for their time, effort, and inconvenience, service awards advance public policy by encouraging individuals to come forward and act to protect the rights of the class.  *See Halleen v. Belk, Inc.,* 2018 WL 6701278 (E.D. Tex. 2018). "District courts in the Fifth Circuit routinely award $5,000-$10,000 per named plaintiff." *Duncan v. JPMorgan Chase Bank, N.A.*, 2016 WL 4419472, at *16 (W.D. Tex. 2016), *report and recommendation adopted*, 2016 WL 4411551 (W.D. Tex. 2016) (citing *DeHoyos v. Allstate Corp.,* 240 F.R.D. 269, 340 (W.D. Tex. 2007); *see also Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*, 2019 WL 387409, at *5 (S.D. Tex. 2019) (approving $10,000 service award);

---

[3]      LR CV-7(a)(2) instructs that non-dispositive motions shall not exceed fifteen pages, excluding attachments. In lieu of seeking additional pages to discuss the background of this litigation in great detail, Plaintiffs refer to and incorporate the Joint Motion for Preliminary Approval, its exhibits, and the Master Appendix that is attached and incorporated to this Application to avoid needless repetition.

*Shaw v. CAS, Inc.*, 2018 WL 3621050, at *4 (S.D. Tex. 2018) (approving $10,000 service award).

The service payments sought under the settlement reflect the efforts by the class representatives in gathering and communicating information to counsel and acting as the public face of the litigation. The class representatives made their homes and tanks available for inspection and testing. [APPX E].  Each assisted with the investigation and preparation of this litigation, gathered documents for production, answered written discovery, stood ready to appear for deposition and trial, and assisted counsel in the litigation. [APPX E]. They stayed abreast of the litigation and performed a valuable service to class members and the public in obtaining the Settlement on behalf of the Class. The agreed service awards of $7,500 are well-deserved and Class Counsel respectfully requests that the Court approve same. [APPX C; D; E].

## II.    CLASS COUNSEL'S ATTORNEYS' FEES, EXPENSES AND COSTS ARE REASONABLE AND CONSISTENT WITH THIS DISTRICT AND FIFTH CIRCUIT PRECEDENT.

Rule 23(h) of the Federal Rules of Civil Procedure states that, "[i]n a certified class action, the court may award reasonable attorney's fees and non-taxable costs that are authorized by law or by the parties' agreement." FED. R. CIV. P. 23(h). The Parties negotiated a maximum amount for court costs, non-taxable costs, and expenses, which the Court has wide discretion to accept.  Because the Parties could not reach a specific agreement as to attorneys' fees, it was settled that Defendant will pay the reasonable attorneys' fees awarded by this Court to Class Counsel in accordance with the authority and evidence. [APPX C].

The Appendix to this Motion is an integral part of this submission.  Class Counsel respectfully refer the Court to it for a detailed description of the factual and procedural history of the litigation, the claims asserted, the thorough and efficient work Lead Counsel performed, the settlement negotiations, and the extraordinary risks and uncertainties presented in this litigation.

A.      **Standard of Review and Scope of Consideration**

"An award of attorneys' fees is entrusted to the 'sound discretion' of the district court." *City of San Antonio, Texas v. Hotels.com, L.P.,* 2017 WL 1382553, at *5 (W.D. Tex. 2017) (quoting *Tex. Commerce Bank Nat'l Ass'n v. Capital Bancshares, Inc*., 907 F.2d 1571, 1575 (5th Cir. 1990)); *see also Strong v. BellSouth Telecommunications, Inc.*, 137 F.3d 844, 850 (5th Cir. 1998); *Forbush v. J.C. Penney Co.,* 98 F.3d 817, 821 (5th Cir. 1996). Additionally, findings of fact supporting the award will only be reviewed under a "clear error" standard. *Strong*, 137 F.3d at 850. "The Court has the ability to consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment with or without the aid of witnesses as to value." *Billitteri v. Sec. Am., Inc.*, 2011 WL 3585983, at *9 (N.D. Tex. 2011).

B.      **Fees Under the "Lodestar Method" Are Justified**

The award sought here is based on Class Counsel's lodestar, which is determined by multiplying the number of hours reasonably expended on the litigation by the timekeeper's hourly rate.[4] *See Hensley* v. *Eckerhart,* 461 U.S. 424, 447-49 (1983); [APPX A; D; E-G]. The Fifth Circuit described the "lodestar method" as the "most useful starting point for determining the amount of a reasonable fee." *Rappaport v. State Farm Lloyds*, 2001 WL 1467357, at *3 (5th Cir. 2001) (per curiam) (quoting *Hensley*, 461 U.S. at 433 (1983)).

Class Counsel tracked and calculated the base lodestar of their attorneys and professional support staff in representing Plaintiffs. [APPX A; D]. Counsel was vigilant in the preparation of time reports representing the actual time spent on the case, and assignments were coordinated in such a way so that all time spent on the case was necessary. Additionally, the hourly rates charged are well justified by the firm's expertise in this type of litigation and by the rates

---

[4]      It bears noting again that the fee award, recoupment of expenses, and service awards in this matter are separate from Defendant's obligations to provide class members the negotiated benefits.

charged in the relevant and respective community. *See* DECLARATIONS – STRACHAN; LYON; LOUGHMILLER [APPX F-G]; [APPX D – 2019 SURVEY].

The base lodestar fee herein, $3,973,576.00, representing thousands of hours expended over the life of this litigation, is fully supported by hourly billing documents based on the relevant rates of complex class action attorneys in this community. [APPX A; D; E-G].

### 1. *The Number of Hours Spent Is Reasonable – Class Counsel Provided Years of Work with no Guarantee of Payment.*

The amount of time a lawyer decides to devote to various tasks in complex litigation is necessarily the product of highly selective judgment-involving questions of strategy and tactics unique to that case-and is ill-suited to hindsight evaluation. *Grant v. Martinez,* 973 F.2d 96, 99 (2d Cir. 1992) ("The relevant issue * * * is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures."), *cert. denied,* 506 U.S. 1053 (1993). **Here, Class Counsel engaged in vigorous prosecution of a complex manufacturing defect class action against a globally-backed international corporation defended by highly-skilled defense advocates with no promise of recovery or payment**.

Only a portion of the extensive work in this case is reflected in the Court's two-hundred and thirty-three (233) docket entries tracing the events in this cause - to reach the Settlement, subsequent severance of the Settlement Class, and preliminary approval for the benefit of the 2011 Class Members, Class Counsel, among other things: (a) conducted a thorough investigation of potential claims against Defendant[5] that included reviewing other litigation, obtaining consulting

---

[5]     Corporate research included Vortens, Inc., a Texas-based domestic location established by Sanitarios Lamosa S.A. de C.V., which was purchased in 2014 by Porcelana Corona S.A. de C.V.).  Upon the filing and service of this lawsuit, Vortens, Inc. was terminated as a business entity and Sanitarios Lamosa withdrew its entity status. [APPX D; I].

expert reports, claims files, exemplar examinations, and analysis of publicly available documents; (b) conducted detailed interviews of individuals seeking direct participation in the class action; (c) consulted with experts in the fields of materials, statistical failure rates, and damages; (d) engaged in extensive written discovery;[6] (e) attended corporate depositions in Monterrey Mexico; (f) required to personally attend plant inspections with retained experts also in attendance due to Defendant's objections to recording protocol; (g) served more than thirty document subpoenas on entities identified by Defendant; (h) took ten depositions (including four corporate representatives and four experts);[7] (i) addressed disputes related to depositions, expert protocols, document production, and confidentiality designations; (j) engaged in examinations and testing of Plaintiffs' and exemplar tanks; (k) prepared multiple mediation briefs with supporting exhibits; and (l) attended three separate full-day mediation sessions. [APPX A; D - E].

The efforts of Class Counsel have not wavered despite nearly three years passing and the significant financial investment and risk, and the strength of the Settlement on behalf of Class Members reflects time well-spent.  As of June 10, 2019, Class Counsel and their firm have spent thousands of hours on this litigation. [APPX A; D-E]. Defendant produced tens of thousands of pages in Spanish requiring the addition of a bilingual paralegal to conduct initial review of all untranslated documents and assist in isolating those needing certified

---

[6]     Defendant produced more than 52,000 bates numbered documents in this matter.  Bates numbering, however, is not a complete reflection of the number of pages produced – duplication of numbering occurred, files with multiple pages/content were singularly bates numbered, expert files were produced using different bates designations, and thousands of pages of documents were procured from third parties by subpoena. More than 700 pages were produced by the Plaintiffs, not including expert file materials.  Additionally, Defendants served, and Plaintiffs responded to, twenty-five Interrogatories *per plaintiff* despite limitations under the federal rules.

[7]     Depositions specific to the arguments and evidence of the Amended Motion for Class Certification of the Remaining Claims are not included or counted in this Fee Application.

translations. [APPX A; D-E]. Class Counsel continually exercised billing judgment and acted to reduce the hours billed by avoiding duplicative work and worked collaboratively and efficiently. [APPX E]. Assignments were made in a coordinated manner to allocate work to attorneys and professional staff whose talents best fit the tasks. *Id.* In sum, Class Counsel remained sensitive to and worked diligently in avoiding unnecessary duplication of time, effort, and expense. *Id.*  The billing documentation reflects a reasonable and controlled number of hours spent by timekeepers with the appropriate levels of experience to accomplish the assigned tasks.  So long as the time expended by counsel in prosecuting the litigation reflected sound legal judgment under the circumstances and produced sufficiently satisfactory results, the time is deemed to have been reasonably expended. *See Hensley*, 461 U.S. at 434.

### 2. *Prevailing Market Rates in the Community Establish the Hourly Rates Billed herein are Reasonable.*

The Fifth Circuit has held that when counsel's billing rate "is within the range of prevailing market rates, the court should consider this rate when fixing the hourly rate to be allowed." *Sierra Club v. Energy Future Holdings Corp*, 2014 WL 12690022, at *3 (W.D. Tex. 2014) (quoting *Islamic Ctr. of Miss.*, *Inc. v. City of Starkville*, *Miss.*, 876 F.2d 465, 469 (5th Cir. 1989)). Class Counsel's hourly rates are reasonable considering prevailing market rates for lawyers with comparably high levels of experience and expertise in complex class litigation. *See In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F.Supp. 2d 1040, 1087-88 (S.D. Tex. 2012) (attorney's requested hourly rate is *prima facie* reasonable); [APPX A; D-G]. The hourly rates charged by Class Counsel are market rates similar to those charged by counsel with expertise in class action and other complex litigation. [*Id.*].

"The prevailing rate, unless other factors dictate, is the current rate that is paid to attorneys even though the litigation spans a number of years." *See Pruett v. Harris Cty. Bail Bond Bd.*, 593

F. Supp. 2d 944, 946 (S.D. Tex. 2008). *see also LeBlanc-Sternberg* v. *Fletcher,* 143 F.3d 748, 764 (2d Cir. 1998) ("[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment").  Class Counsel's hourly rates, which range from $125 to $150 for professional support staff and from $300 to $695 for attorneys, are comparable for rates charged by other attorneys with similar background and experience in complex class action litigation. [8] [APPX A; D-G]

Since late-2016, Scott Carpenter spent 2686.1 hours in the prosecution of this case. [APPX A; D; E]; Rebecca Bell-Stanton spent over 2837.8 hours in the prosecution of this case. [APPX A; E]. In making this Application, Class Counsel has further adjusted its total base lodestar to account for potential billing redundancies and traditional non-billable time.[9]  Additionally, the base lodestar included in the Appendix reflects only hours considered *after reduction in hours for billing judgment*. [APPX A; D-E].  Paralegal work can be recovered as a component of attorneys' fees to the extent that the paralegal performs work "traditionally done by an attorney." *Allen v. U.S. Steel Corp*., 665 F.2d 689, 697 (5th Cir. 1982).[10]  Counsel estimates that an additional three hundred (300) hours will be expended through the conclusion of the Final Approval Fairness Hearing now set for August 29, 2019.

---

[8]  The Court may use its own expertise and judgment to make a determination of the reasonable hourly rate of a paralegal just as it is authorized to do in determining the reasonable hourly rate for attorney services. *MidCap Media Fin., LLC v. Pathway Data, Inc.*, 2018 WL 7890668, at *5 (W.D. Tex. 2018).

[9]  Additionally, this Motion does not include a request for compensation of time committed to the Amended Motion for Class Certification – Remaining Claims.

[10]  "There is no precise test for determining whether a task is legal or clerical." *Malick v. NCO Fin. Servs., Inc*., 2015 WL 4078037, at *5 n. 4 (S.D. Tex. 2015).  "Courts have found legal work may include tasks such as assisting with depositions and document production, preparing subpoenas, conducting factual investigation, and compiling data." *Hotels.com, L.P*, 2017 WL 1382553, at *6–7; *see also Malick,* 2015 WL 4078037, at *5 (approving a fee for work on legal tasks that were not as sophisticated as many but, nonetheless, legal in nature, including "factual investigation, * * * assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence")).

**C.      Enhancement of Class Counsel's Base Lodestar Fee is Well-Deserved.**

The determination of a reasonable fee does not end at the multiplication of the number of hours expended on the litigation by the hourly rate - the second step of the lodestar method assesses "whether the lodestar amount should be adjusted upward or downward, depending on the circumstances of the case and based on the factors set out in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974)." *Ceats, Inc. v. TicketNetwork, Inc*., 2019 WL 1857888, at *2 (E.D. Tex. Apr. 25, 2019) (quoting *Rutherford v. Harris Cty., Tex.*, 197 F.3d 173, 192 (5th Cir. 1999); *Union Asset Management Holding, A.G. v. Dell*, 669 F3d 632, 642-643 (5th Cir. 2012); *see also Klein el al. v. O'Neal, Inc. et al*., 705 F.Supp. 2d 632, 680 (N.D. Tex. Apr. 9, 2010) (holding a multiplier was warranted "due to the risks entailed in this lawsuit and the zealous efforts of the attorneys that resulted in a significant recovery for the class").  An upward multiplier in this case is well-justified considering the exceptional nature of the Settlement results; Class Counsel's total fee request reflects a contemplated multiplier of their base lodestar that is well within the range of reasonableness for complex class action cases in this jurisdiction. *See, e,g, DeHoyos*, 240 F.R.D. at 333 (stating the average range of multipliers in class actions is 1.0 to 4.5 and "multipliers on large and complicated class actions have ranged from at least 2.26 to 4.5").

The Fifth Circuit mandates application of the twelve "*Johnson* factors" for enhancement of the base lodestar:[11] (1) time and labor required; (2) novelty and difficulty of the questions; (3) skill required to perform the legal service properly; (4) preclusion of other employment by the attorney due to acceptance of the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) amount involved and the results

---

[11]      "We must determine whether 'the record clearly indicates that the district court has utilized the *Johnson* framework as the basis of its analysis, has not proceeded in a summary fashion, and has arrived at an amount that can be said to be just compensation.'" *In re High Sulfur Content Gasoline Prod. Liab. Litig.*, 517 F.3d 220, 227 (5th Cir. 2008) (quoting *Forbush*, 98 F.3d at 823).

obtained; (9) experience, reputation and ability of the attorneys; (10) "undesirability" of the action; (11) nature and length of the professional relationship with the client; and (12) other similar cases. *Johnson,* 488 F.2d at 717- 19 (5th Cir. 1974); *see also Dell*, 669 F3d at 642 n.25.  "Of these factors, the court should give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation, and ability of counsel." *NSEW Holdings LLC v. Wells Fargo Bank, N.A.*, 2017 WL 1030313, at *6–7 (E.D. Tex. 2017) (Mazzant, J.).

### 1.  *Factor One: Time and labor required*

Factor one is not wholly subsumed base lodestar calculation in all circumstances.  Class Counsel has engaged in contested litigation against skilled defense counsel for the past two-and-a-half years and there is still work to be done before the Settlement is approved and made final. The unique labor involved in cross-border litigation supports the requested enhancement especially when self-auditing has occurred in the exercise of billing judgment.  *Shaw,* 91 F. Supp. 2d at 970 ("As noted above, the time committed by Class Counsel was enormous; but just as important the work performed was difficult. Class Counsel spent long hours weeding through technical material or reviewing data on a computer screen; they underwent the tedium of conducting depositions through translators; and they read piecemeal through discovery documents with the help of a translator.").  This factor supports approval of the requested fee enhancement.

### 2.  *Factor Two: Novelty and difficulty of the questions*

A mainstay of Defendant's arguments throughout this litigation was, and continues to be, that manufacturing defect cases are not susceptible to class treatment. Indeed, it has all along been a defense position that the class questions posed were novel and required "going bravely where no * * * judge has gone before;" this Court ordered further briefing to aid in resolution of this critical

dispute.  Although Plaintiffs disagree as to the absolutism of such position, class certification of manufacturing defects are not the norm since they require complex expert statistical analysis and particularized materials and causation experts. The inclusion of a certification request under Rule 23(b)(2) presented further unique obstacles hinging upon public policy and argumentative comparisons with precedent in other jurisdictions.  Accordingly, this factor supports approval of the requested fee enhancement.

### 3.   Factors Three and Nine: Skill required to perform the legal service properly; Experience, reputation and ability of the attorneys

The third and the ninth *Johnson* factors – the skill required and the experience, reputation, and ability of the attorneys – are partially subsumed by the first step of the lodestar method.[12] However, in determining a fee enhancement, this Court weighs the standing of opposing counsel as reflective of the challenge faced by Class Counsel and "confirms the superior quality of their representation." *Schwartz v. TXU Corp.*, 2005 WL 3148350, *30 (N.D. Tex. 2005).  Here, Defendant was represented by highly experienced lawyers from Hartline Barger, a prestigious and well-respected defense firm, who along with in-house counsel from both Porcelana's Mexico manufacturing location and Corona's Bogota, Columbia corporate offices vigorously and ably defended the Action. Accordingly, the weight of these two factors is not limited solely to determining base lodestar reasonableness but further favors enhancement.

### 4.   Factor Four: Preclusion of other employment.

Counsel tracked the cases on which representation was requested and declined due to the time constraints imposed by this litigation.   [Appx A; D-E]. This factor is neutral in the enhancement analysis, however, so long as the hours expended are compensated under the base

---

[12]       Class Counsel refers and incorporates the arguments and evidentiary proof discussed above as to the reasonableness of the base lodestar fee. and their many years of experience in complex federal civil litigation, particularly in litigation of products liability and other class actions.

fee component of the lodestar method. *OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*, 2015 WL 5021954, at *10 (S.D. Tex. Aug. 24, 2015) (holding that the award of the requested hours subsumed this factor since counsel "could not perform work for other clients" at the same time).

### 5. *Factor Five: Customary fee*

The requested hourly rate is derived from the market rates of the community and is well within the range of customary fees. To the extent factor five was considered in the hourly rate calculation it is neutral in determining whether an enhancement is appropriate.

### 6. *Factors Six and Ten: Fixed or Contingent Fee; Undesirability of the action*

Considered together in the context of this enhancement request are *Johnson* factors six, "whether the fee is fixed or contingent," and ten, "whether the case was 'undesirable." *See Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 WL 1942227, at *12 (N.D. Tex. 2018). ("[T]he 'risk of non-recovery' and 'undertaking expensive litigation against * * * well financed corporate defendants on a contingent fee' has been held to make a case undesirable, warranting a higher fee."); *see also OneBeacon*, 2015 WL 5021954, at *11. Class Counsel undertook this class action on a contingency-fee basis, carrying both the substantial out-of-pocket costs of litigation and the risk of not being paid for their services or reimbursed for their costs.[13]

"The risks faced by counsel must be assessed as they existed at the time counsel undertook the litigation and not in light of the settlement ultimately achieved." *Harless*, 2013 WL 12303194, at *3. The risk of zero recovery was substantial throughout the prosecution of this difficult case. [Appx D; E]. Accordingly, this factor supports fee enhancement. Accordingly, these factors

---

[13]     Precedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet lost the case despite their advocacy. *Buettgen v. Harless*, 2013 WL 12303194, at *3 (N.D. Tex. 2013) ("The risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. Any fee or expense award has always been at risk and completely contingent on the result achieved.").

support approval of the requested fee enhancement. *See, e.g., OneBeacon,* 2015 WL 5021954, at

*13 (applying a multiplier of three to account for the contingent nature and undesirability of the

case).

### 7. *Factors Seven and Eleven: Time limitations; Nature and length of the professional relationship with the client*

The public policy and pertinent factual bases behind factors seven and eleven are not

implicated in this litigation beyond the discussion of representative service awards or other fee

elements already considered.

### 8. *Factor Eight: Amount involved and the results obtained*

"As the United States Supreme Court has consistently maintained, as the Fifth Circuit has

repeatedly held, and as this Court has previously written, 'the most critical factor in determining

the reasonableness of a fee award is the degree of success obtained.'" *Shaw v. Toshiba Am. Info.*

*Sys., Inc.*, 91 F. Supp. 2d 942, 971 (E.D. Tex. 2000) (string citation omitted). The Joint Motion

for Preliminary Approval and incorporated Settlement materials prove the undeniable fact that

Class Counsel secured substantial benefits for tens of thousands of class members also

collectively own hundreds of thousands of toilet tanks, including: cash reimbursement of up to

$300 per tank replacement; cash reimbursement of up to $4,000 for property damage; and non-

monetary protections.[14]   The Settlement also provides relief based on information only obtained

by Class Counsel because of this embattled litigation – an independently administered replacement

program that uniformly provides the installation of replacement tanks at no cost to the owner, a

lengthy extension of warranty for unreplaced tanks, and modification of releases originally

---

[14]     Benefit, in the context of this *Johnson* factor, is not limited to monetary relief or the value of the
property right protected. *Shaw*, 91 F. Supp. 2d at 971 "When considering the quality of the proposed
Settlement Agreement, this Court considered both the monetary and the non-monetary benefits the class is
to receive.")

requiring a complete waiver of warranty to now provide a five-year warranty. [APPX C]. This factor weighs heavily in favor of enhancement of the base lodestar.

### 9. Factor Twelve: "similar cases"

Factor twelve in large part falls outside of fee enhancement in this matter "because cases like these do not have 'customary fees'" considering the complexity of the class action process. *Halliburton*, 2018 WL 1942227, at *11. Certainly, the requested multiplier of the lodestar fee is similar and consistent with complex class action litigation. *Hotels.com, L.P.*, 2017 WL 1382553, at *15; *see also In re Dell Inc.*, 2010 WL 2371834, at *15 n. 7 (W.D. Tex. June 11, 2010) *aff'd, appeal dismissed sub nom*, 669 F.3d 632 (5th Cir. 2012) ("In using the lodestar method, courts typically apply "multipliers" ranging from one to four"); *see also Di Giacomo v. Plains All Am. Pipeline*, 2001 WL 34633373, at *11 (S.D. Tex. 2001) (approving 5.3 multiplier); *In re Enron Corp. Securities, Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 752 (S.D. Tex. 2008) (finding from "a survey of multipliers" that 83% of applied enhancements "range 1.0 to 4.0'").

### D.   Counsel Should be Awarded Their Costs and Expenses.

In addition to attorneys' fees, attorneys in a class action may cover their reasonable expenses that would typically be billed to paying clients in non-contingency matters. *Mills v. Electric Auto-Ute Co.*, 396 U.S. 375, 391-92 (1970). The Settlement Agreement authorizes Class Counsel to seek up to $500,000 in litigation expenses [APPX C]. To date, Class Counsel's costs and expenses total $372,105.77 and remain unreimbursed.  [APPX B; D].Class Counsel advanced expenses in the form of cash for the past two-and-a-half years with no guarantee of recovery, and to date, no reimbursement. These costs have been adequately documented and were reasonably incurred for the benefit of the Settlement Class. [APPX B; D].[15]

---

[15]    The exact final number of expenses cannot be known at the time of drafting this application because expenses continue to accrue and will do so until the fairness hearing on August 29, 2019. In accordance

Class Counsel respectfully requests an Order awarding full reimbursement of these documented costs and expenses in accordance with the terms of the Settlement.

## CONCLUSION

Class Counsel has spent thousands of hours over the past two-and-a-half years on this case. The Settlement provides cash compensation for replacement of Class Tanks installed throughout the nation, cash reimbursement of costs incurred for prior replacement/installation, cash reimbursement of costs incurred from property damage, and expansive warranty benefits. Plaintiffs, therefore, seek approval of the agreed service awards, reimbursement of all litigation costs and expenses, and an award of attorneys' fees based on reasonable recorded hours multiplied by Class Counsel's hourly rates and thereafter enhanced in recognition of the securement of extraordinary benefits for Class Members. The requested awards are "separate and apart from the class settlement" and "will not in any way diminish" the benefits received by the Class. *DeHoyos,* 240 F.R.D. at 322. "Were the Court to reduce the award of class counsel's fees, this would not confer a greater benefit upon the class, but rather would only benefit [Defendant]." *Id*.

Plaintiffs, therefore, respectfully request that in connection with granting final approval to the Settlement, the Court further grant this Motion ordering the agreed service payments to the class representatives, the requested award of the base lodestar fee enhanced by a multiplier, and an award of all litigation costs and expenses requested herein.

---

with the agreed deadlines as set-forth in the Notice.  Counsel will update this Application for purposes of seeking additional reimbursement of these future, yet currently unknown expenses.

Respectfully submitted,

*/s/ Rebecca Bell-Stanton*
**REBECCA E. BELL-STANTON**
State Bar No. 24026795
**N. SCOTT CARPENTER**
State Bar No. 00790428
CARPENTER & SCHUMACHER, P.C.
2701 NORTH DALLAS PARKWAY, SUITE 570
Plano, Texas 75093
(972) 403-1133
(972) 403-0311 [Fax]
scarpenter@cstriallaw.com
rstanton@cstriallaw.com

*ATTORNEYS FOR PLAINTIFFS AND*
*PROPOSED SETTLEMENT CLASS*


## CERTIFICATE OF CONFERENCE

Pursuant to Local Rules, I hereby certify that counsel for the movant has conferred with counsel for the Defendant in a good faith effort to resolve the issues of raised in this Motion but has been unable to resolve same.  The parties, therefore, seek resolution of these issues directly from the Court and by contested motion.


*/s/ Rebecca Bell-Stanton*
**REBECCA BELL-STANTON**


## CERTIFICATE OF SERVICE

The original Motion was filed on June 17, 2019 in accordance with the ascribed deadlines. I certify that on the 18th day of June, 2019, upon notification of the need for correction and inclusion of a Certificate of Conference, that the foregoing was served to all counsel of record either by hand delivery, U.S. Mail, postage pre-paid, facsimile, electronically, and/or *via* the Court's CM/ECF document filing system.


*/s/ Rebecca Bell-Stanton*
**REBECCA BELL-STANTON**