IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| MARK AND AMBER FESSLER, ANDREW HOCKER, KEVIN REUSS, MATTHEW CARRERAS, CHARLES AND MICHELLE HANDLY, AARON AND STACEY STONE, and DANIEL AND SHARON SOUSA, on Behalf of Themselves and Those Similarly Situated<br>  *Plaintiffs*<br><br>v.<br><br>PORCELANA CORONA DE MÉXICO, S.A. DE C.V f/k/a SANITARIOS LAMOSA S.A. DE C.V. a/k/a Vortens<br>  *Defendant*. | § § § § § § § § § § § § § § § § § § | Civil Action File No.<br>4:19-cv-00248<br><br>Hon. Judge Amos Mazzant/<br>Hon. Magistrate Judge Priest-Johnson<br><br><br>*Jury Trial Demanded*<br><br><br><br>JOINT MOTION AND MEMORANDUM OF LAW IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT |

**JOINT MOTION AND MEMORANDUM OF LAW IN SUPPORT OF
FINAL APPROVAL OF SETTLEMENT**

NOW COME Plaintiffs and Appointed Class Representatives Kevin Reuss and Charles and Michelle Handly, on behalf of Themselves and Those Similarly Situated, and Defendant Porcelana Corona de Mexico, S.A. de C.V. f/k/a Sanitarios Lamosa S.A. de C.V. a/k/a Vortens, hereby filing their Joint Motion for Final Approval of the Class Action Settlement, wherein same jointly and respectfully move this Court for final approval of the class action settlement (the "2011 Settlement") Preliminarily Approved by this Honorable Court [Dkt. 11; 13], the terms of which being set forth in the Stipulated Settlement materials[1] and the Settlement Agreement (collectively "the Settlement Agreement" or "Agreement"). [Dkt.7-2].

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Parties respectfully move for entry of final Orders as follows:

---

[1] The Stipulated Settlement materials are attached to the Joint Motion for Preliminary Approval [Dkt. 3]; the record was later supplemented with the Settlement Agreement [Dkt. 7.2].

**I.      INTRODUCTION**

This Court granted the Parties' Joint Motion for Preliminary Approval (Case No. 4:17-CV-001, Dkt. #191, and Case No. 4:19-CV-248, Dkt. #3) on May 3, 2019. In accordance with the terms of the Order Granting Preliminary Approval, the Parties and counsel respectfully submit final approval is now warranted.

The Settlement provides substantial monetary and non-monetary recovery to consumers who own or owned toilet tanks Vortens™ model #3412 and #3464 manufactured between January 1, 2011 through December 31, 2011. As a result of the vigorous litigation efforts and multiple arms-length mediations, the Settlement delivers relief to class members who: (1) incurred out-of-pocket costs to repair or remediate damage to property after an affected tank fracture; (2) incurred out-of-pocket costs to replace affected tanks in the past; (3) currently own affected tanks eligible for replacement; and/or (4) elect to retain ownership of affected tanks.

The Named Parties and their counsel concur in support of the Requested Final Approval of Settlement. Further, the overwhelmingly positive reaction of the Class is also compelling support for the Settlement. No objections to the Settlement, or any part thereof, were asserted or received.[2] The lack of objections confirms the reasonableness of the decision to resolve the Action in exchange for benefits provided by the Settlement and strongly supports the inference that the Class agrees that the Settlement is fair, reasonable and adequate. As of August 14, 2019, the Claims Administrator has received 422 claims. *See* Exhibit A – SUPP. AZARI DECLARATION.

---

[2]      The Deadline for requesting exclusion from the Class expired on June 30, 2019. One Opt-Out Form was timely received by the Claims Administrator but was incomplete. The Deadline for objecting to the Settlement expired on July 15, 2019.

## II.    BACKGROUND OF LITIGATION

In order to avoid repetition, the Court is respectfully referred to the Joint Motion for Preliminary Approval and its Attachments [Dkt.3], the two Joint Supplementations in support of preliminary approval with all Attachments [Dkt.6; 7], and the pleadings and docket history of Case No. 4:17-CV-001 and Case No. 4:19-CV-248, all of which are incorporated herein by reference, for a full discussion of the factual and procedural history of the Action, the background of the claims asserted, discovery, and the negotiations leading to the Settlement, all of which support final approval of the Settlement.

## III.    THE SETTLEMENT MEETS THE JUDICIAL STANDARDS FOR FINAL APPROVAL UNDER RULE 23(e)

The Settlement avoids the substantial risks faced by the Parties in the absence of the negotiated Agreement. After an extensive analysis of the evidence, the relative strengths and weaknesses of the claims and defenses asserted, the serious issues and disputes remaining among the parties, and the time and expense of trial, Plaintiffs and Class Counsel have concluded that the Settlement is fair, reasonable and adequate and in the best interests of the Class.[3] Although maintaining its denial of the allegations of wrongdoing, Defendant and its counsel also believe the Settlement is in Defendant's best interest to avoid further expense, inconvenience and interference with its ongoing business operations, and the risk of liability. The Settlement, as detailed herein, provides the Class with a substantial recovery in the form of both monetary and non-monetary benefits and meets the judicial standards for final approval.

    A.    <u>The Law Favors and Encourages Settlements</u>

Courts have long observed a general policy favoring settlement of disputed claims. *In re Deepwater Horizon*, 739 F.3d 790, 807 (5th Cir. 2014) (noting the "overriding public interest in

---

[3] Class Representative Handly and Class Representative Reuss approve the proposed Settlement and this Joint Motion for Final Approval. *See* Exhibit B – HANDLY DECLARATION; Exhibit C – REUSS DECLARATION, filed herewith.

3

favor of settlement that we have recognized '[p]articularly in class action suits'")(citations omitted). The Fifth Circuit has consistently held that settlements "will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits." *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977). Particularly when reviewing settlements of class actions, this Circuit has held that "there is an overriding public interest in favor of settlement," because such class action suits "have a well-deserved reputation as being most complex." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).   Because of this complexity, however, a court in reviewing a proposed class action settlement should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981).

In addition, there is a strong initial presumption of fairness attached to a proposed settlement if the settlement is reached by experienced counsel after arm's-length negotiations. *See United States v. Tex. Educ. Agency*, 679 F.2d 1104, 1108 (5th Cir. 1982); *see also In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) ("So long as the integrity of the arm's length negotiation process is preserved * * * a strong initial presumption of fairness attaches to the proposed settlement."), *aff'd*, 117 F.3d 721 (2d Cir. 1997).  To a large degree, in determining the fairness and reasonableness of a proposed settlement, courts must rely on the judgment of competent counsel, terming such counsel the "linchpin" of an adequate settlement. *Reed v. GMC*, 703 F.2d 170, 175 (5th Cir. 1983) ("[T]he value of the assessment of able counsel negotiating at arm's length cannot be gainsaid.  Lawyers know their strengths and they know where the bones are buried.").  Thus, if experienced counsel determine that a settlement is in the class' best interests, "the attorney's views must be accorded great weight." *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978). Here, the Settlement was reached by experienced, fully informed counsel after extensive investigation and substantial formal discovery was conducted, and only after hard-fought settlement

negotiations (including three formal day-long mediation sessions) had occurred. Thus, little doubt exists that this Settlement is entitled to a presumption of fairness.

      B.    <u>The Fifth Circuit's Standards Governing Class Action Settlements</u>

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, a class action may not be dismissed or compromised without the approval of the court. The standard for reviewing a proposed settlement of a class action by courts in the Fifth Circuit, as in other circuits, is whether the proposed settlement is "fair, adequate, and reasonable." *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012); *Cotton*, 559 F.2d at 1330. In applying this standard, courts must determine whether, considering the claims and defenses asserted by the parties, the proposed compromise represents a "reasonable evaluation of the risks of litigation." *Fla. Trailer & Equip. Co. v. Deal*, 284 F.2d 567, 571 (5th Cir. 1960). Courts in the Fifth Circuit typically consider the following six factors in this approval analysis:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members.

*Reed*, 703 F.2d at 172; *see also Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004). As demonstrated herein, the application of the foregoing factors strongly supports a finding that the Settlement is fair, reasonable and adequate and warrants the Court's final approval.

      C.    <u>The Fifth Circuit's *Reed* Factors Supports Final Approval</u>

          1.    *The Settlement Is Free from Fraud and Collusion*

This Settlement clearly presents the indicia of arm's-length negotiations conducted without fraud or collusion. *See, e.g.*, *San Antonio Hispanic Police Officers' Org., Inc. v. City of San Antonio*, 188 F.R.D. 433, 458 (W.D. Tex. 1999) (finding that there was no evidence of collusion, but rather, that "the settlement was the result of hard fought, arm's length negotiations"). The

5

parties engaged in two, full-day formal mediations with Chris Nolland, a highly experienced mediator, followed by a third, full-day formal mediation with another highly experienced mediator John Shipp. *See Duncan v. JPMorgan Chase Bank, N.A.*, No. SA-14-CA-00912-FB, 2016 WL 4419472, at *7 (W.D. Tex. May 24, 2016) ("Moreover, the fact that the parties reached a settlement with the assistance of a qualified mediator followed by three months of negotiations and discovery demonstrates a likelihood that the settlement was the result of informed, good-faith, arm's length negotiations rather than fraud or collusion."), *report and recommendation adopted*, No. SA-14-CA-912-FB, 2016 WL 4411551 (W.D. Tex. June 17, 2016). At all times in this Action, both sides zealously advocated their respective positions. It was only after extended investigation and litigation, which included months of targeted negotiations, that the Settlement was reached.

    2. *The Complexity, Expense, and Likely Duration of Continued Litigation Favor Approval of the Settlement*

If the Settlement had not been reached, all parties were prepared to litigate to trial and through any appeals, if necessary. The Settlement avoids the hurdles Plaintiffs must clear with respect to overcoming Defendant's defenses – scope of defect, causation, conditions precedent, and limitations – and avoids the continuation of significant costs associated with proceeding to trial in this complex manufacturing defect action. Further, the Settlement avoids the risk of liability and possibility of an award of substantial damages. The costs associated with the continued litigation efforts would be extremely high and would require additional years to conclude, necessitating many hours of the Court's time and resources. *Id.; see Clark v. Lomas & Nettleton Fin. Corp.*, 79 F.R.D. 641, 651-52 (N.D. Tex. 1978) (noting that the expense of trial can be "staggering"), *vacated on other grounds*, 625 F.2d 49 (5th Cir. 1980). Accordingly, the expense and delay of a potential trial counsel in favor of the Settlement.

6

### 3. *The Stage of the Proceedings and the Amount of Discovery Completed*

"There is no precise formula for what constitutes sufficient evidence to enable the court to analyze intelligently the contested questions of fact. It is clear that the court need not possess evidence to decide the merits of the issue, because the compromise is proposed in order to avoid further litigation." 4 NEWBERG ON CLASS ACTIONS §11.45, at 127. By the time the parties reached the Settlement, there can be no question that they had an advanced knowledge and understanding of the merits of the claims alleged in the Action in order to determine that the Settlement is fair, reasonable and adequate. Numerous trips to Mexico occurred, including corporate representative depositions and plant inspections involving traveling with experts to locations in both Monterrey and Benito Juarez. The parties engaged in two product inspections occurring over multiple days and conducted extensive product testing, including testing performed by an independent third-party facility. Multiple depositions were taken and documents numbering in the hundreds of thousands of pages produced, many in Spanish. The knowledge and insight gained by all parties and their counsel over the course of this Action provided sufficient information to evaluate the strengths and weaknesses of the class claims and asserted defenses, and ultimately to the Settlement.

### 4. *The Probability of Plaintiffs' Success on the Merits*

While Class Counsel believes that the claims are sufficiently strong enough to prevail on the merits at trial, Plaintiffs recognize, nonetheless, that ultimate success against the Defendant cannot be ensured. *See In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 125 (D.N.J. 2002) ("Regardless of the strength of case counsel might present at trial, victory in litigation is never guaranteed."). In determining the Settlement's fairness, Class Counsel has carefully considered and analyzed the potential risks to continued litigation, and in light of such risks, believes the Settlement is in the best interests of the Class.

a. Risks to Establishing Liability

Although Plaintiffs believe the case is meritorious and that the Class would ultimately prevail in establishing both liability and damages, they also understand that numerous factors can make the outcome of a trial uncertain. For instance, while Plaintiffs trust that the documentary and testimonial evidence intended for trial fully support their claims, they also understand that Defendants intend to present testimony and documentary evidence designed to support Defendant's defenses. There is no way of predicting which interpretations, inferences or testimony a jury would accept. The Settlement avoids the risk that these matters might have been viewed by the Court or jury as favorable to Defendant.

Moreover, absent settlement, Plaintiffs and the Class also faced the risk that the fact finder might have viewed the liability issues in this case as technical and complex, thereby misunderstanding or dismissing the facts forming the basis of Plaintiffs' claims. *Id.* Defendant adamantly denied culpability throughout the litigation, continuing such denial into the present, and was prepared to mount aggressive defenses that could potentially bar a class recovery. If the jury sided with Defendant on its defenses, the Class could recover nothing.

b. Risks to Establishing Loss Causation and Damages

Even if Plaintiffs succeeded in overcoming every defense the Defendant proposed to raise with respect to liability, Plaintiffs also would be required to make certain showings concerning loss causation and damages. Although Plaintiffs would present expert testimony on the issue of causation and damages, Defendant's expert witnesses have offered testimony to the contrary. One cannot predict how a jury will weigh competing experts' testimony, and the crucial element of damages would likely be reduced at trial to a "battle of the experts. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing damages at trial would lead to a 'battle of experts,' * * * with no guarantee whom the jury would believe"); *Streber v. Hunter*, 221 F.3d 701,

8

726 (5th Cir. 2000) (stating jury can believe whichever expert it finds more credible). Therefore, the uncertainties concerning the ability to win a verdict for damages in an amount greater than the Settlement support approval.

### 5. *The Range of Possible Recovery*

To assess the reasonableness of a proposed settlement seeking monetary relief, an inquiry "should contrast settlement rewards with likely rewards if case goes to trial." *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 239 (5th Cir. 1982); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.").

Furthermore, if Plaintiffs' theory of loss causation and damages were to fail before a jury, the opportunity for recovery would be significantly diminished, if not eliminated. Accordingly, this factor weighs in favor of approval of the Settlement.

### 6. *The Opinions of Class Counsel, Plaintiffs and the Class*

"[W]here the parties have conducted an extensive investigation, engaged in significant fact-finding and Lead Counsel is experienced in class-action litigation, courts typically 'defer to the judgment of experienced trial counsel who has evaluated the strength of his case.'" *Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 U.S. Dist. LEXIS 27077, at *72 (N.D. Tex. Nov. 8, 2005); *see also DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 292 (W.D. Tex. 2007) ("The endorsement of class counsel is entitled to deference, especially in light of class counsel's significant experience in complex civil litigation and their lengthy opportunity to evaluate the merits of the claims."); *Lelsz v. Kavanagh*, 783 F. Supp. 286, 297 (N.D. Tex. 1991) (holding that the opinions of experienced counsel "deserve appropriate deference from the Court").

Given that the Settlement provides a substantial recovery for the Class and given the risks in litigating this Action further, it is all counsels' opinion that the Settlement be approved. Second, the fact that the appointed Class Representatives conclude that the proposed Settlement is a fair, reasonable, and adequate compromise of the claims should be given considerable weight. *See* REUSS DECLARATION; HANDLY DECLARATION. Third, the reaction of the Class to the Settlement has been overwhelmingly supportive. In response to the notice procedures ordered by the Court [Dkt.11;13], substantially completed and confirmed in the June 27, 2019 AZARI DECLARATION, and the attached August 14, 2019 AZARI DECLARATION, no class members objected to the Settlement. *See Quintanilla v. A&R Demolition, Inc.*, No. H-04-1965, 2008 U.S. Dist. LEXIS 37449, at *15 (S.D. Tex. May 7, 2008) (the reaction of the class to the settlement should be considered and held that here, where there was no objections, it demonstrated that the class was "overwhelmingly" in favor of settlement); *Maher v. Zapata Corp.*, 714 F.2d 436, 456 (5th Cir. 1983) ("Other factors favoring approval of the settlement here are the minimal nature of shareholder objection."). This lack of dissent militates heavily in favor of the Court's final approval of the Settlement.

Therefore, the parties jointly and respectfully submit that the analyses set forth above and all of the circumstances of the Settlement demonstrate that the Settlement is fair, reasonable and adequate.

## IV. THE NOTICE PROVIDED TO THE CLASS SATISFIES THE REQUIREMENTS OF BOTH DUE PROCESS AND RULE 23

Rule 23(c)(2) requires notice of a proposed class action settlement be provided to the class through "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FED. R. CIV. P. 23(c)(2)(B); *see also* FED. R. CIV. P. 23(e)(1); *In re Heartland Payment Sys., Inc.*, 851 F. Supp. 2d 1040, 1060 (S.D. Tex. 2012) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005)). "Rule

10

23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise.'" MANUAL FOR COMPLEX LITIGATION §21.312, at 293 (4th ed. 2004). To satisfy due process requirements, notice to class members must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

In accordance with the Court's Order [Dkt. 11; 13], the appointed Notice Provider, Epiq, initiated the Notice Plan on May 16, 2019. AZARI DECLARATION – IMPLEMENTATION AND ADEQUACY OF SETTLEMENT NOTICE.[4] The Notice Plan included the following:

- Direct Mail Notice. A copy of the Notice of Proposed Settlement of Class Action substantially in the form attached to the Joint Supplementation as Exhibit B (the "Class Notice"), together with the Claim Form substantially in the form also attached to the Supplement as Exhibit B, were mailed to all reasonably identifiable 2011 Settlement Class Members and persons or entities listed in the agreed industry Mailing Lists. There were 62,405 total mailings sent.

- Published Notice. A copy of the Summary Notice substantially in the form attached to the Supplement as Exhibit B was published in a Consumer Print Publication (*People*), Trade Publications (*Buildings*, *Contractor*, *PHC News*, and *Plumbing & Mechanical*), and local newsprint (*Houston Chronicle*).

- National Press Release. A joint press release was issued on May 16, 2019 and again on July 15, 2019, on PR Newswire's national wire, reaching approximately 5,500 media outlets and 5,400 websites. The release discussed the Settlement and provided the address for the Settlement Website where information could be obtained and downloaded.

- Internet Notice. Banner ads appeared on leading networks, including National Online Banners (Google Display Network), Local DMA Banners (Google Display Network and Facebook), and State-Wide Banners (Facebook).

- Website Notice. A copy of the Notice of Proposed Settlement of Class Action was posted and is available for download on a Settlement Website. This information will be available on the Internet until the last day of the eighteen-month Claims Period (November 16, 2020).

---

[4] Dkt. 22-1.

11

[Dkt. 22-1].

The Notice mailed to Class Members provided the information required by Fed. R. Civ. P. 23(c)(2)(B) including: (i) an explanation of the nature of the Action and the claims asserted; (ii) the definition of the Class certified by the Court; (iii) a description of the basic terms of the Settlement, including the amount of the consideration and the releases to be given; (iv) an explanation of the reasons why the parties are proposing the Settlement; (v) a statement indicating reasonable attorneys' fees and expenses would be sought; (vi) a description of Class Members' right to request exclusion from the Class or to object to the Settlement; and (vii) notice of the binding effect of a judgment on Class Members. The Notice also provides recipients with information on how to submit a Proof of Claim. *See* Exhibit A – SUPP. AZARI DECLARATION.

Accordingly, the form and manner of notice provided to Class Members in this case complies with the Court's directives in the Order for Notice and Hearing and satisfies the requirements of due process and FED. R. CIV. P. 23(c) and (e).

## CONCLUSION

The Parties jointly submit this Motion for Final Approval of the Settlement, and respectfully move the Court for an Order that the terms of the settlement are approved as fair, reasonable, adequate, and in the best interests of the Class Members, addressing Class Counsel's fee and expense application through separate Order, and to enter Final Judgment approving the Settlement and dismissing the Action with prejudice.

Respectfully submitted,

 /s/ N. Scott Carpenter
**N. SCOTT CARPENTER**
State Bar No. 00790428
**REBECCA E. BELL-STANTON**
State Bar No. 24026795
CARPENTER & SCHUMACHER, P.C.
2701 NORTH DALLAS PARKWAY, SUITE 570
Plano, Texas 75093
(972) 403-1133
(972) 403-0311 [Fax]
scarpenter@cstriallaw.com
rstanton@cstriallaw.com

*ATTORNEYS FOR PLAINTIFFS AND PROPOSED SETTLEMENT CLASS*

 /s/ Melissa Dorman Matthews
**DARRELL L. BARGER**
State Bar No. 01733800
dbarger@hartlinebarger.com
**HARTLINE BARGER LLP**
800 N. Shoreline Blvd., Suite 2000, North Tower
Corpus Christi, Texas 78401
(361) 866-8000
(361) 866-8039 fax

**MELISSA DORMAN MATTHEWS**
State Bar No. 00790603
mmatthews@hartlinebarger.com
**ANGELA S. GORDON**
State Bar No. 24027333
agordon@hartlinebarger.com.com
**L. ABIGAIL FOREMAN**
State Bar No. 24056371
aforeman@hartlinebarger.com
**HARTLINE BARGER LLP**
8750 N. Central Expressway, Suite 1600
Dallas, TX 75231
(214) 369-2100
(214) 267-4271 (direct facsimile)

*ATTORNEYS FOR DEFENDANT PORCELANA CORONA DE MEXICO, S.A. DE C.V. F/K/A SANITARIOS LAMOSA S.A. DE C.V. A/K/A VORTENS*

## **CERTIFICATE OF CONFERENCE**

I certify that counsel for the respective parties cooperated and conferred as to the filing and content of this Motion and jointly present this Motion for Final Approval of Settlement.

        */s/ Rebecca Bell-Stanton*
        **REBECCA BELL-STANTON**

## **CERTIFICATE OF SERVICE**

I certify that on the 14th day of August, 2019 that the foregoing was served to all counsel of record either by hand delivery, U.S. Mail, postage pre-paid, facsimile, electronically, and/or *via* the Court's CM/ECF document filing system.

        */s/ Rebecca Bell-Stanton*
        **REBECCA BELL-STANTON**