IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| MARK AND AMBER FESSLER, | § | Civil Action File No. |
| ANDREW HOCKER, KEVIN REUSS, | § | **4:19-cv-00248** |
| MATTHEW CARRERAS, CHARLES AND | § | |
| MICHELLE HANDLY, AARON AND | § | Hon. Judge Amos Mazzant/ |
| STACEY STONE, and DANIEL AND | § | Hon. Magistrate Judge Priest-Johnson |
| SHARON SOUSA, on Behalf of Themselves and | § | |
| Those Similarly Situated | § | PLAINTIFFS' FEE AND EXPENSE |
|     *Plaintiffs* | § | APPLICATION |
| | § | |
| v. | § | |
| | § | |
| PORCELANA CORONA DE MÉXICO, S.A. | § | |
| DE C.V. f/k/a SANITARIOS LAMOSA S.A. | § | |
| DE C.V. a/k/a Vortens | § | |
|     *Defendant.* | § | |

*AND*

| | | |
|---|---|---|
| STEVEN AND JOANNA CONE, | § | Civil Action File No. |
| MARK AND AMBER FESSLER, | § | **4:17-cv-00001** |
| ANDREW HOCKER, MATTHEW CARRERAS, | § | |
| AARON AND STACEY STONE, and | § | Hon. Judge Amos Mazzant/ |
| DANIEL AND SHARON SOUSA | § | Hon. Magistrate Judge Priest-Johnson |
| on Behalf of Themselves and | § | |
| Those Similarly Situated | § | PLAINTIFFS' FEE AND EXPENSE |
|     *Plaintiffs* | § | APPLICATION |
| | § | |
| v. | § | |
| | § | |
| PORCELANA CORONA DE MÉXICO, S.A. | § | |
| DE C.V. f/k/a SANITARIOS LAMOSA S.A. | § | |
| DE C.V. a/k/a Vortens | § | |
|     *Defendant.* | § | |

**PLAINTIFFS' MOTION FOR APPROVAL OF AWARD OF ATTORNEYS'
<u>FEES AND REQUEST FOR REIMBURSEMENT OF LITIGATION EXPENSES</u>**

COMES NOW Plaintiffs, by their undersigned counsel, and seek this Honorable Court's

Order approving payment of attorneys' fees and expenses for the successful work done and

outstanding result obtained in this case.  Class counsel has succeeded in obtaining significant cash

benefits for aggrieved consumers, establishment of a defined replacement program at no cost to the product owner, and additional non-cash warranty extension benefits affecting hundreds of thousands of tank product for the benefit of multiple classes under both Rule 23(b)(2) and Rule 23(b)(3) in settlement of the above-captioned actions (the "Actions");[1] therefore, in support of this Consolidated Fee and Expenses Application, Plaintiffs respectfully submit that the requested attorneys' fees and reimbursement of costs and expenses are fair and reasonable under the applicable federal standards and should, therefore, be awarded by the Court.

For purposes of record citation, Class Counsel has abbreviated the cause numbers in the separate actions as follows:

**(4:17-Dkt#___)** *Steven and Joanna Cone, et.al, on Behalf of Themselves and Those Similarly Situated v. Porcelana Corona de Mexico, S.A. de C.V. f/k/a Sanitarios Lamosa S.A. de C. V. a/k/a Vortens*; 4:17-cv-00001

**(4:19-Dkt#___)** *Mark and Amber Fessler, et. al., on Behalf of Themselves and Those Similarly Situated v. Porcelana Corona de Mexico, S.A. de C.V. f/k/a Sanitarios Lamosa S.A. de C. V. a/k/a Vortens*; 4:19-cv-00248

---

[1]     The Appendix to this Motion is an integral part of this submission.  Class Counsel respectfully refer the Court to it for a detailed description of the factual and procedural history of the litigation, the claims asserted, the thorough and efficient work Lead Counsel performed, the settlement negotiations, and the extraordinary risks and uncertainties presented in this litigation.

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ...................................................................................... ii

TABLE OF AUTHORITES .................................................................................. iv

SUMMARY OF THE LITIGATION AND FEE APPLICATION ...................................... 1

AUTHORITY AND ANALYSIS ............................................................................. 4

I.      SCOPE OF THE SETTLEMENTS ................................................................. 5

        A.      The National Class Settlement – All Owners of 2011 Tank Models
                #3412 and #3464 ..................................................................... 5

        B.      The Texas Class Settlement – Texas owners of 2007-2010 Tank
                Models #3412 and #3464 manufactured at Benito Juarez ............ 6

        C.      Fees and Expense Settlement Terms.......................................... 7

II.     CLASS COUNSEL'S REQUEST FOR ATTORNEY'S FEES IS REASONABLE AND
        CONSISTENT WITH THIS DISTRICT AND FIFTH CIRCUIT PRECEDENT ............... 8

        A.      Standard of Review and Scope of Consideration........................... 8

        B.      Fees Under the "Lodestar Method" Are Justified ......................... 9

                1.      The Number of Hours Spent Is Reasonable ...................... 9

                2.      Anticipated Argumentation – Retroactive percentages to
                        further reduce otherwise Reasonable Hours.................... 12

                3.      Prevailing Market Rates in the Community Establish the
                        Hourly Rates Billed herein are Reasonable..................... 14

        C.      Enhancement of Class Counsel's Lodestar Fee is Well-Deserved ............ 15

                1.      Factor One: Time and labor required ............................. 17

                2.      Factor Two: Novelty and difficulty of the questions ....................... 17

3.  *Factors Three and Nine: Skill required to perform the legal service properly: Experience, reputation and ability of the attorneys* ......................................................................... 18

4.  *Factor Four: Preclusion of other employment.* .............................. 19

5.  *Factor Five: Customary fee* ............................................................ 19

6.  *Factor Six and Ten: Fixed or Contingent Fee; Undesirability of the action* ..................................................................................... 20

7.  *Factors Seven and Eleven: Time limitations; Nature and length of the professional relationship with the client* ............................... 22

8.  *Factor Eight: Amount involved and the results obtained* ............... 22

9.  *Factor Twelve: "similar cases"* ..................................................... 24

III.  CLASS COUNSEL'S REQUEST FOR REIMBURSEMENT OF ALL EXPENSES AND COSTS IS REASONABLE AND CONSISTENT WITH THIS DISTRICT AND FIFTH CIRCUIT PRECEDENT ......................................................................... 24

CONCLUSION ........................................................................................... 25

APPENDIX
Appx. 1        *Master Lodestar Summary*
Appx. 2        *Master Expense Summary*
Appx. 3        *2011 National Settlement Class*
Appx. 4        *Equitable Relief Settlement Class - Texas*
Appx. 5        *Class Benefit Summary*
Appx. 6        *Case Authority Summary*
Appx. 7        *Declaration of N. Scott Carpenter*
Appx. 8        *Declaration of Rebecca Bell-Stanton*
Appx. 9        *NALFA Survey*
Appx. 10       *Declaration of Ted B. Lyon, Jr.*
Appx. 11       *Declaration of Mark D. Strachan*
Appx. 12       *Declaration of Amanda P. Loughmiller*
Appx. 13       *Declaration of Charles Handly*
Appx. 14       *Declaration of Kevin Reuss*
Appx. 15       *Declaration of Daniel Sousa*
Appx. 16       *Declaration of Stacey Stone*

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                                    **<u>Page(s)</u>**

*Allen v. U.S. Steel Corp.*,
    665 F.2d 689 (5th Cir. 1982) ...................................................................... 14

*Billitteri v. Sec. Am., Inc.,*
    2011 WL 3585983 (N.D. Tex. 2011)............................................................. 8

*Buettgen v.  Harless*,
    2013 WL  12303194 (N.D.  Tex.  2013)................................................19, 20, 21

*Ceats, Inc. v. TicketNetwork, Inc.*,
    2019 WL 1857888 (E.D. Tex. 2019) ........................................................... 14

*City of San Antonio, Texas v. Hotels.com, L.P.*,
    2017 WL 1382553 (W.D. Tex. 2017).................................... 8, 14, 20, 21, 23

*Combs v. City of Huntington,*
    829 F.3d 388 (5th Cir. 2016) ...................................................................... 22

*DeHoyos v. Allstate Corp.*,
    240 F.R.D. 269 (W.D. Tex.2007)......................................................... 15, 25

*Di Giacomo v. Plains All Am. Pipeline*,
    2001 WL 34633373 (S.D. Tex. 2001) ........................................................ 23

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    2018 WL 1942227 (N.D. Tex. 2018).................................... 19, 20, 21, 23, 24

*Forbush v. J.C. Penny Co.*,
    98 F.3d 817 (5th Cir. 1996) ................................................................... 8, 15

*Go Frac, LLC*,
    2017 WL 3699350 (2017).................................................................... 15, 24

*Grant v. Martinez*,
    973 F.2d 96 (2d Cir. 1992), cert. denied, 506 U.S. 1053 (1993) ................... 9

*Graves v. Barnes*,
    700 F.2d 220 (5th Cir. 1983) ...................................................................... 19

*Hensley* v. *Eckerhart,*
 461 U.S. 424 (1983), .................................................................................. 9, 12, 13

*In re Dell Inc.,*
 2010 WL 2371834 (W.D. Tex. June 11, 2010)
 *aff'd, appeal dismissed sub nom*, 669 F.3d 632 (5th Cir. 2012) ........................... 15, 23

*In re Enron Corp. Securities, Derivative & ERISA Litig.,*
 586 F. Supp. 2d 732 (S.D. Tex. 2008) ........................................................ 23

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.,*
 851 F.Supp. 2d 1040 (S.D. Tex. 2012) ...................................................... 13

*In re High Sulfer Content Gasoline Prods. Liab. Litig.,*
 517 F.3d 220 (5th Cir. 2008) ................................................................ 8, 9, 15

*In re Rent-Way Sec. Litig.,*
 305 F.Supp. 2d 491 (W.D. Pa. 2003) ........................................................ 16

*In re Volkswagen & Audi Warranty Extension,*
 89 F.Supp. 3d 155 (D. Mass. 2015) .......................................................... 22

*Int'l Woodworkers of Am., AFL-CIO & Its Local No. 5-376 v. Champion Int'l Corp.,*
 790 F.2d 1174 (5th Cir. 1986) ................................................................ 20

*Islamic Ctr. Of Miss., Inc. v. City of Starkville, Miss.,*
 876 F.2d 465 (5th Cir. 1989) ................................................................ 13

*Johnson v. Georgia Highway Express,*
 488 F.2d 714 (5th Cir. 1974) ............................................................. *passim*

*Jones v. Diamond,*
 636 F.2d 1364 (5th Cir. 1981) ............................................................. 19, 20

*Klein el al. v. O'Neal, Inc. et al.,*
 705 F.Supp. 2d 632 (N.D. Tex. Apr. 9, 2010) ........................................... 14

*LeBlanc-Sternberg v. Fletcher,*
 143 F.3d 748 (2d Cir. 1998)................................................................ 18

*Lohr v. Gilman,*
 2018 WL 6199290 (N.D. Tex. 2018)........................................................ 12

*OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*,
  2015 WL 5021954 (S.D. Tex. Aug. 24, 2015) ......................................... 18, 19, 20, 21

*Malick v. NCO Fin. Servs., Inc.*,
  2015 WL 4078037 (S.D. Tex. 2015) .......................................................................... 14

*MidCap Media Fin., LLC. V. Pathway Data, Inc*.,
  2018 WL 7890668 (W.D. Tex. 2018)................................................................... 12, 14

*Mills v. Electric Auto-Ute Co*.,
  396 U.S. 375 (1970)...................................................................................... 22, 24

*Mota v. Univ. of Tex. Hous. Health Sci. Ctr.*,
  261 F.3d 512 (5th Cir. 2001) .................................................................................... 13

*Navigant Consulting, inc. v. Wilkinson*,
  508 F.3d 277 (5th Cir. 2007) .................................................................................... 13

*NSEW Holdings LLC v. Wells Fargo Bank, N.A.*,
  2017 WL 1030313 (E.D. Tex. 2017) (Mazzant, J.) .................................................... 15

*Pruett v. Harris Cty. Bail Bond Bd.*,
  F. Supp. 2d 944 (S.D. Tex. 2008) ............................................................................. 18

*Ramirez v. J.C. Penny Co.*,
  2017 WL 6462355 (E.D. Tex. 2017) ......................................................................... 12

*Rappaport v. State Farm Lloyds*,
  2001 WL 1467357 (5th Cir. 2001) (per curiam)............................................................ 9

*Rebollar v. Ortega Med. Clinic*,
  2019 WL 3975454 (S.D. Tex. 2019) ......................................................................... 12

*Rutherford v. Harris Cty., Tex.*,
  197 F.3d 173 (5th Cir. 1999) .................................................................................... 14

*Schwartz v. TXU Corp.*,
  2005 WL 3148350 (N.D. Tex. 2005)................................................................... 17, 18

*Shaw v. Toshiba Am. Info. Sys., Inc.*,
  91 F. Supp. 2d 942 (E.D. Tex. 2000) ............................................................. 16, 21, 22

*Sierra Club v. Energy Future Holdings Corp*,
2014 WL 12690022 (W.D. Tex. 2014) ........................................................................ 13

*Stoetzner v. U.S. Steel Corp.,*
897 F.2d 115 (3d Cir. 1990) ........................................................................................ 15

*Strong v. Bell South Telecommunications, Inc.*
137 F.3d at 844 (5th Cir. 1998) ................................................................................... 8

*Tex. Commerce Bank Nat'l Ass'n v. Capital Bancshares, Inc.*,
907 F.2d 1571 (5th Cir. 1990) ..................................................................................... 8

*Union Asset Management Holding, A.G. v. Dell*,
669 F.3d 632 (5th Cir. 2012) ....................................................................................... 14

**Other Authorities**                                                           **Page(s)**

Richard Posner, *Economic Analysis of Law*, §21.9 ........................................................ 19

Recovery of Attorney Fees, RUTTER GROUP PRAC. GUIDE FED. CIV. TRIALS & EV. CH. 19-
B (2019) ........................................................................................................................ 22

**Rules and Statutes**                                                           **Page(s)**

Fed.R.Civ.P. 23(b)(2) ........................................................................................................ ii

Fed.R.Civ.P. 23(b)(3) ........................................................................................................ ii

Fed.R.Civ.P. 23(h) ..................................................................................................... *passim*

Fed.R.Civ.P. 54 ............................................................................................................... 6, 7

## SUMMARY OF THE LITIGATION AND FEE APPLICATION

On January 1, 2017, Steven and Joanna Cone filed their Class Action Complaint against Sanitarios Lamosa S.A. de C.V. and Vortens, Inc. seeking relief for themselves and on behalf of other owners of Vortens' toilet tanks manufactured in Mexico and sold across the United States. [4:17-Dkt.1]. More than three years later, this consolidated Fee Application is submitted to recover Class Counsel's delayed compensation and expense reimbursement pursuant to the settlement agreements. As this Honorable Court is well-aware, Plaintiffs submitted separate Fee Applications due to the severance of the national settlement class from certain remaining claims; all parties have submitted extensive briefing as to the separate fee applications segregated by the defined classes in the two Settlement Agreements. [APPX 3; 4]:

*Fee Application in 4:19-cv-00248: Fessler, et. al v. Porcelana – National Settlement Class*. On June 18, 2019, Plaintiffs filed a Fee Application in the severed matter and provided billing and expense summaries, detailed time entries, community declarations, a 2019 rate survey, and Class Counsel's declarations regarding rates, hours, and the exercise of billing judgment:

### AFTER INTERNAL DELETION OF CLERICAL WORK, DOCUMENT MANITANENCE, DUPLICATIVE ENTRIES, AND SEGREGATION [4:19; Dkt. 20-1]

| | | | |
|---|---|---|---|
| N. Scott Carpenter | $695 | 2686.1 | $1,866,770.00 |
| Rebecca Bell-Stanton | $675 | 2837.8 | $1,915,515.00 |
| Doug Heuval | $525 | 88.1 | $    46,252.50 |
| Sabina Pincus | $425 | 82.4 | $    35,020.00 |
| Anthony LaScalea | $300 | 21.1 | $      6,330.00 |
| Veronica Negron | $140 | 93.0 | $    13,020.00 |
| Enrica Peters | $140 | 65.4 | $      9,156.00 |
| Bridget Holley | $125 | 652.1 | $    81,512.50 |
| | | | **$3,973,576.00**[2] |

---

[2]     During the auditing process, Plaintiffs subsequently calculated the value of additional adjustments to account for internal memorandum and team case management planning meetings, additional hours in discovery review that were necessary because of the language barrier, but upon review may have appeared excessive, additional hours spent conducting detailed research into the corporate structures and public financial filings of the relevant international and domesticated business organizations (including parent companies and subsidiaries), the sale/purchase of the manufacturing plants in Mexico and the international approval process required, and review of ongoing litigation

Porcelana reviewed, generally challenged, and made specific objections to the billing records provided.[3] The line-item specific objections, if sustained, would reduce the lodestar by $52,258. Plaintiffs thereafter provided billing supplementation to account for hours spent up to August 14, 2019, which increased the lodestar by an additional **$104,819.50**. In response, Porcelana provided additional line-item objections that, if sustained, would result in a further reduction of $2,128.50.

As argued during the hearing on the Fee Application, after reduction based on objections as well as voluntary adjustments for billing judgment, the base lodestar requested based on billing invoices through August 14,2 019 totaled **$4,024,009.00**. Plaintiffs requested application of a 2.9 multiplier to the base lodestar fee after consideration of the *Johnson* factors. Reimbursement of litigation expenses were also requested pursuant to the terms of the Settlement Agreement. Plaintiffs submitted a Proposed Order detailing the suggested factual findings based on the record, discussion of the *Johnson* factors and resultant award. [4:19-Dkt.40].

*Fee Application in 4:17-cv-0001: Cone, et. al v. Porcelana - Texas-only Settlement Class.* Relying on the critical but necessary presumption that the base lodestar presented in the severed action ($4,024,00.00) would form the "floor" of the fee analysis, Plaintiffs requested only "remaining claims" fees and expenses not sought in the 4:19-cv-00248 application. The lodestar connected to the second Fee Application, **$229,768.00**, represented solely the segregable

---

against these Defendants arising from manufacturing defect claims occurring in both Canada and the United States. The value of these voluntary adjustments is reflected in the consolidated billing records included in the Fee Application Appendix. [Appx 1; 1-A].

[3]      The Final Papers in support of the Final Approval of Settlement hearing were filed on August 14, 2019.  As part of the final papers, Plaintiffs filed a billing supplement to account for additional hours spent since the prior submission, additional segregation of entries and voluntary redactions. [4:19-Dkt.#33]. Porcelana thereafter filed a response to the Supplementation combining its prior objections with additional objections to the supplemental appendix. [4:19-Dkt.#35-3; 35-4].

reasonable hours spent by Mr. Carpenter and Rebecca Bell-Stanton in litigating these discrete "Remaining claims" activities up to the date of the January 17, 2020 application submission. Plaintiffs again requested application of a 2.9 multiplier to the base lodestar fee after consideration of the *Johnson* factors. Reimbursement of the remaining litigation expenses not included in the initial Fee Application were also requested pursuant to the terms of the Settlement Agreement. [4:17-Dkt.262; 269; 269-1].

***Consolidation of Fee and Expense Applications.***   In the second set of fee application papers, parties included concern as to unanswered questions still pending in the first fee application. On February 26, 2020, a telephonic hearing occurred regarding the overlap in the briefing and the dependent nature of findings and award.[4]   Noting that the complexities of allocation between the severed actions was alleviated due to the settlement of all remaining claims, the Court instructed counsel to resubmit their fee requests as a singular, combined Application to be filed in both actions and submit a proposed scheduling order for the briefing. [4:17-Dkt.272].

Class Counsel hereby submit this Consolidated Application for Attorney's Fees and Reimbursement for Expenses in consideration of the extensive time, efforts and delay in compensation to secure the spectacular benefits for the classes. The total base lodestar, which includes all time up through the submission of this Consolidated Fee Application on March 9, 2020, is **$4,388,405.50**.[5] Plaintiffs continue to seek application of a 2.9 multiplier to the base lodestar fee after consideration of the *Johnson* factors. Reimbursement of total litigation expenses is also requested.

---

[4]      No party objected to a singular determination of attorney's fees and expenses. Defendant noted its intention to seek leave prior to the March 2, 2020 final approval hearing for a combined determination of the Applications.

[5]      A Consolidated Master Lodestar Summary that combines the information from the prior submissions and further includes the updated billing records is included in the Fee Application Appendix along with the supporting billing invoices. [APPX. 1; 1-A]

## AUTHORITY AND ANALYSIS

The tiered settlements are the result of extensive litigation, thousands of expended hours in written discovery, international depositions, review of hundreds of thousands of documentary pages (many of which were produced only in Spanish), attending manufacturing plant inspections in both Benito Juarez, Mexico and Monterrey, Mexico, and protracted settlement negotiations conducted at arms' length, all occurring with significant risk to the putative class and Class Counsel. Although the lengthy docket entries in the two actions provide a glimpse into the extensive work performed in this products liability class action, the progression of this litigation was an aggressive, hard-fought battle to secure the class action settlements, named plaintiffs'' settlements, and service awards for class representatives.[6]

In addition to the general actions described above, reaching the conclusion of this litigation required defending against motions to strike class allegations, multiple motions for summary judgment, multiple motions to strike experts, multiple motions to compel, multiple certification motions, ultimately breaking down the affected putative class members into definable groups, arguing and allocating appropriate remedies for the divided categories, three mediations building upon agreements to account for as many potential scenarios as possible, severing the action to allow for immediate relief for class members whose benefits were already determined, and then with the same fervor and dedication accorded the national class settlement, still pressing forward to obtain remedies for individuals not falling within the original settlement agreement. [APPX 7;

---

[6]     Plaintiffs refer to and incorporate the Joint Motion for Preliminary Approval of the Equitable Class [4:17-Dkt.#258]; Plaintiffs' Unopposed Motion for Final Approval of the Equitable Class and Final Approval Supplementation [4:17-Dkt.#261]; Order Granting Final Approval of the Equitable Class [4:17-Dkt.#273]; Joint Motion for Preliminary Approval of the 2011 Settlement Class [4:19-Dkt.#07]; Joint Motion for Final Approval of the 2011 Settlement Class [4:19-Dkt.#32]; Order Granting Final Approval of the 2011 Settlement Class [4:19-Dkt.#41], and the Master Appendix that is attached and incorporated to this Application to avoid needless repetition.

8].  Due to Class Counsel's vigorous, persistent, and skilled efforts, the stacked settlements stand as an exceptional recovery in the face of substantial risk.

## I.   SCOPE OF THE SETTLEMENTS

A.   <u>The National Class Settlement – All Owners of 2011 Tank Models #3412 and #3464</u>.

Over the course of three mediations, the Parties reached a Settlement without geographical limitation to provide American owners of designated Vortens' tank models substantial, real and immediate class benefits:[7] (1) $150 cash reimbursement per replaced Class Tank by sworn declaration, *or* (2) $300 cash reimbursement per Class Tank with proof of out-of-pocket expenses;[8] <u>and</u> (3) 100% cash reimbursement up to $4,000 for property damage expenses. [APPX 3].  Class Members owning a Class Tank that do not elect replacement within the Claim Period are still afforded a significant benefit under the Settlement – an extension of the original one-year warranty (which otherwise expired in 2012) to December 31, 2021. The Settlement also contains a negotiated advantage for owners that previously waived warranty protection - past executed releases are modified to include a product warranty enforceable for five years from the date of the executed release.  [APPX 3].  Through the appointment of a third-party administrator and the enforcement authority of this Court, this initial Settlement also provides an additional needed layer of oversight in the administration of this relief, without any cost to the Class [APPX 3].

The Settlement Agreement contained provisions pertaining to the anticipation of a request and application for recovery of fees and expenses by Class Counsel, such as:

---

[7]     The Settlement provides a remedy for hundreds of thousands of toilet tanks (models #3412 and #3464) manufactured in 2011.

[8]     In addition to the cash benefits and warranty extensions, the Settlement creates a replacement program option for Class Members residing in areas designated as 2011 high distribution locations to receive installation of Porcelana's replacement tank product at no cost.

- "Attorney Fees and Expenses" means the amount of any attorney fees and reimbursement of litigation expenses awarded to Class Counsel pursuant to their Fee Petition. [APPX 3, p2]

- "Fee Petition" means the application to be filed by Class Counsel by which they will seek an award of attorney fees and reimbursement of litigation expenses incurred by them in prosecuting the Lawsuits, and all aspects of the settlement of them, as well as a Service Award to be paid to Plaintiffs. [APPX 3, p4]

- As part of this Settlement, Attorney Fees and Costs and Service Awards do not reduce the amount of money available to pay Valid Claims submitted by Settlement Class Members or the amount of money to be paid for work performed by the Settlement Administrator. [APPX 3, p17]

- The amount of attorney fees and costs to be paid to Class Counsel shall be determined by the Court. After the Court preliminarily approves the Settlement, Class Counsel may submit a Fee Application to the Court. [APPX 3, p17]

In cooperation with the appointed class administrator, the Parties prepared appropriate notice materials for distribution in accordance with the court-approved notice plan.  In accordance with the Court's Order, a copy of the Fee Application, Response, and Reply briefing was posted on the Settlement website. [APPX 3].

The national 2011 Class Settlement that provides significant monetary and non-monetary benefits obtained Final Approval without intervention or objection to its terms.  [4:19-Dkt.41]. Pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2), Plaintiffs and Class Counsel submitted an Application for Attorney's Fee Award and Reimbursement of Expenses with notice to the class.

B. The Texas Class Settlement – Texas owners of 2007-2010 Tank Models #3412 and #3464 manufactured at Benito Juarez

The Parties recently reached a Settlement that concludes this litigation in its entirety[9] and provides substantial, real and immediate class benefits for all Texas owners of toilet tank models

---

[9]     As reflected in the Settlement Memorandum, resolution of the remaining plaintiffs' claims was a negotiated term in order to reach finality as to all claims and parties. Appropriate dismissal documents will be filed for named plaintiffs not included as class representatives so that Final Judgment in both actions may be entered.  [APPX 4].

#3412 and #3464 manufactured between 2007-2010 at the Defendant's Benito Juarez plant: (1) cash reimbursement of replacement costs for prior fractured Class Tanks with proof of out-of-pocket expenses; (2) interpretation "replacement costs" as a part of the warranty benefits for Class Tanks; and (3) an extension of the original Class Tank warranty up through and including December 31, 2020. [APPX 4].  Similar to the settlement negotiated for the national class, the Settlement provides an additional layer of oversight in the administration of this relief, all of which occurring without any cost to the Class. [APPX 4].  And once again, in cooperation with the appointed class administrator, the Parties prepared appropriate notice materials for distribution in accordance with the court-approved notice plan, including the posting of the Fee and Expense Application on the Settlement website. [APPX 4].

The Texas Class Settlement proceeded to the final approval hearing without intervention or objection to its terms.[10] Final approval of the equitable relief Texas-only Settlement Class was granted on March 2, 2020. [4:17-Dkt.273]. Class Counsel submitted an Application for Attorney's Fee Award and Reimbursement of Expenses with notice to the class for those matters previously segregated from the initial Fee Application in accordance with Rule 23(h) and Rule 54(d)(2).

C.  Fees and Expense Settlement Terms

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or the parties' agreement." FED. R. CIV. P. 23(h).  When, as here, the settlement calls for a defendant to fund the payment of attorneys' fees to class counsel, it relieves the class of the burden of paying those fees from the recovery otherwise available to class members. Both settlements include Porcelana's agreement to separately pay reasonable litigation expenses as determined by the Court.  [APPX 3; 4].

---

[10]     The deadline for objection passed on February 14, 2020.

## II.   CLASS COUNSEL'S REQUEST FOR ATTORNEY'S FEES IS REASONABLE AND CONSISTENT WITH THIS DISTRICT AND FIFTH CIRCUIT PRECEDENT.

Rule 23(h) of the Federal Rules of Civil Procedure states that, "[i]n a certified class action, the court may award reasonable attorney's fees and non-taxable costs that are authorized by law or by the parties' agreement." FED. R. CIV. P. 23(h).  The Settlements secured in seeing this litigation to its conclusion expressly provide authority under federal precedent for the requested awards and reimbursement. [APPX 3; 4].

### A.   Standard of Review and Scope of Consideration

"An award of attorneys' fees is entrusted to the 'sound discretion' of the district court." *City of San Antonio, Texas v. Hotels.com, L.P.,* 2017 WL 1382553, at *5 (W.D. Tex. 2017) (quoting *Tex. Commerce Bank Nat'l Ass'n v. Capital Bancshares, Inc.*, 907 F.2d 1571, 1575 (5th Cir. 1990)); *see also Strong v. BellSouth Telecommunications, Inc.*, 137 F.3d 844, 850 (5th Cir. 1998); *Forbush v. J.C. Penney Co.,* 98 F.3d 817, 821 (5th Cir. 1996).  Additionally, findings of fact supporting the award will only be reviewed under a "clear error" standard. *Strong*, 137 F.3d at 850.  "The Court has the ability to consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment with or without the aid of witnesses as to value." *Billitteri v. Sec. Am., Inc.*, 2011 WL 3585983, at *9 (N.D. Tex. 2011).

Significant discretion is given in awarding fees under Rule 23. The determination of reasonable hours/rates and application of the *Johnson* factors is reviewed for clear error; the fee award is reviewed under the abuse of discretion standard. *See* FED. R. CIV. P. 23(h). The Fifth Circuit advises that it does "not require the trial court's findings to be so excruciatingly explicit in this area of minutiae that decisions of fee awards consume more paper than did the cases from which they arose." *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 228-29 (5th Cir. 2008).

B.    <u>Fees Under the "Lodestar Method" Are Justified</u>

One of the few issue the parties appear to agree upon is the propriety of using the lodestar method in calculating attorney's fees. The base lodestar is determined by multiplying the number of hours reasonably expended on the litigation by the timekeeper's hourly rate.[11] *See Hensley* v. *Eckerhart,* 461 U.S. 424, 447-49 (1983); [APPX 1; 1-A]. The Fifth Circuit described the "lodestar method" as the "most useful starting point for determining the amount of a reasonable fee." *Rappaport v. State Farm Lloyds*, 2001 WL 1467357, at *3 (5th Cir. 2001) (per curiam) (quoting *Hensley*, 461 U.S. at 433 (1983)).

Class Counsel tracked and calculated the base lodestar of their attorneys and professional support staff in representing Plaintiffs. [APPX 7; 8]. Counsel was vigilant in the preparation of time reports representing the actual time spent on the case, and assignments were coordinated in such a way so that all time spent on the case was necessary. Additionally, the hourly rates charged are well justified by the firm's expertise in this type of litigation and by the rates charged in the relevant and respective community. *See* MARKET RATE SURVEY [APPX 9]; *see also* COMMUNITY DECLARATIONS – LYON; STRACHAN; LOUGHMILLER [APPX 10-12].

The base lodestar fee herein, **<u>$4,388,405.50</u>**, is fully supported by hourly billing documents based on the relevant rates of complex class action attorneys in this community. [APPX 1-A, 3-12].

1.   *The Number of Hours Spent Is Reasonable.*

The amount of time a lawyer decides to devote to various tasks in complex litigation is necessarily the product of highly selective judgment-involving questions of strategy and tactics unique to that case-and is ill-suited to hindsight evaluation. *Grant v. Martinez,* 973 F.2d 96, 99 (2d Cir. 1992) ("The relevant issue * * * is not whether hindsight vindicates an

---

[11]    It bears noting again that the fee award, recoupment of expenses, and award of costs are separate from Defendant's obligations to provide class members the negotiated benefits under the Settlement agreements.

attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures"), *cert. denied,* 506 U.S. 1053 (1993). Here, Class Counsel engaged in vigorous prosecution of a complex manufacturing defect class action against a globally backed international corporation defended by skilled advocates with no promise of recovery or payment.

Only a portion of the extensive work in this case is reflected in the two-hundred and seventy-four (274) docket entries in 4:17-cv-0001 and forty-four (44) docket entries in 4:19-cv-0248 tracing the events in this cause.  The billing records reflect that Class Counsel, among other things: (a) conducted a thorough investigation of potential claims against Defendant[12] that included reviewing other litigation, obtaining consulting expert reports, claims files, exemplar examinations, and analysis of publicly available documents; (b) conducted detailed interviews of individuals seeking direct participation in the class action; (c) consulted with experts in the fields of materials, statistical failure rates, and damages; (d) engaged in extensive written discovery;[13] (e) attended corporate depositions in Monterrey Mexico; (f) required to personally attend plant inspections with retained experts also in attendance due to Defendant's objections to recording protocol; (g) served more than thirty document subpoenas on entities identified by Defendant; (h) took twelve depositions (four of which required contemporaneous translation); (i) addressed disputes related

---

[12]     Corporate research included Vortens, Inc., a Texas-based domestic location established by Sanitarios Lamosa S.A. de C.V., which was purchased in 2014 by Porcelana Corona S.A. de C.V.). According to Porcelana, these actions were designed "so that the entire market would perceive us as a U.S. company." Upon the filing and service of this lawsuit, however, Sanitarios Lamosa withdrew its domestic entity status.

[13]     Defendant produced more than 52,000 bates numbered documents in this matter.  Bates numbering, however, is not a complete reflection of the number of pages produced – duplication of numbering occurred, files with multiple pages/content were singularly bates numbered, expert files were produced using different bates designations, and thousands of pages of documents were procured from third parties by subpoena.  More than 700 pages were produced by the individual Plaintiffs, not including expert file materials.  Additionally, Defendants served, and Plaintiffs responded to, twenty-five Interrogatories *per plaintiff* despite limitations under the federal rules.

to depositions, expert protocols, document production, and confidentiality designations; (j) engaged in examinations and testing of Plaintiffs' and exemplar tanks; (k) prepared multiple mediation briefs with supporting exhibits; and (l) attended three separate full-day mediation sessions. [Appx 1-A; 3; 4].

After reaching the settlement benefiting the national class of consumers, severance of the settlement class occurred, a second motion for class certification was briefed, argued, and granted in part, additional expert and corporate representative depositions were conducted, non-dispositive motions were briefed and ruled upon, and litigation actions in the two matters occurred contemporaneously as the national class pressed forward through the preliminary approval process, execution of the notice plan, and to final approval. [4:17-Dkt.273; 4:19-Dkt.41]

The efforts of Class Counsel have not wavered despite more than three years passing and the significant financial investment and risk, and the strength of the Settlements on behalf of Class Members reflects time well-spent.  As of March 9, 2020, Class Counsel and their firm have spent more than the requested compensation calculated as 7,134.4 hours on this litigation. [Appx 1; 1-A]. Defendant produced tens of thousands of documents in Spanish requiring the addition of a bilingual paralegal to conduct initial review of all untranslated documents and assist in isolating those needing certified translations. [Appx 1-A; 7]. Class Counsel continually exercised billing judgment and acted to reduce the hours billed by avoiding duplicative work and worked collaboratively and efficiently. [Appx 1-A; 8]. Assignments were made in a coordinated manner to allocate work to attorneys and professional staff whose talents best fit the tasks. *Id.* In sum, Class Counsel remained sensitive to and worked diligently in avoiding unnecessary duplication of time, effort, and expense in requesting compensation for the 7,134.4 hours. *Id.*   The billing documentation reflects a reasonable and controlled number of hours spent

by timekeepers with the appropriate levels of experience to accomplish the assigned tasks. [APPX 1-A; 8]. So long as the time expended by counsel in prosecuting the litigation reflected sound legal judgment under the circumstances and produced sufficiently satisfactory results, the time is deemed to have been reasonably expended. *See Hensley*, 461 U.S. at 434.

> ### 2. Anticipated Argumentation – Retroactive percentages to further reduce otherwise Reasonable Hours.

In prior briefing, Porcelana insisted this Court engraft an additional step to the segregation doctrine – a "pleaded potential" formula that retroactively discounts legal services.  Correct application of the segregation constraint requires the following:

(1) *Segregation of time between types of actions permitting awards for fees by statute, agreement or rule from those that do not*.[14] **This step should not be in dispute – the settlement agreement authorizes this Court to award those fees incurred for "prosecuting the Lawsuits, and all aspects of the settlement of them." Additionally, the Fee Application is provided in accordance with the requirements of Rule 54(d)(2).**

(2) *Segregation of time identifiable as wholly discrete legal services*.[15] **This step should not be in dispute – this Fee Application is a consolidation of efforts taken to prosecute this litigation to its conclusion, and Class Counsel wholly excluded time for actions solely benefiting non-prevailing parties to the extent possible.**

(3) *Final assessment of hours reasonably expended in advancement of a prevailing judgment or settlement.*[16] **Assuming Porcelana mirrors its specific objections from the prior, mooted briefing, the objections asserting duplication in entries or excessive time will need rulings to determine**

---

[14]    *See, e.g.,* FED. R. CIV. P. 23(h); *Ramirez vs. J.C. Penny Co.*, 2017 WL 6462355, *5 (E.D. Tex. 2017), *report and recomm. adopted*, 2017 WL 6453012 (E.D. Tex. 2017)

[15]    A claimant must segregate recoverable from unrecoverable attorney's fees if any fees relate **solely** to a claim for which attorney's fees are unrecoverable. *Lohr v. Gilman*, 2018 WL 6199290, at *9 (N.D. Tex. 2018) (emphasis added).

[16]    When discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined, they need not be segregated. *See Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 297-99 (5th Cir. 2007); *Mota v. Univ. of Tex. Hous. Health Sci. Ctr.*, 261 F.3d 512, 528 (5th Cir. 2001); *Hensley v. Eckerhart*, 461 U.S. 424, 434-35 (1983).

**whether reductions in the time entries are warranted.** [17] **Plaintiffs contend that the time entries are sufficiently detailed to address individual objections without the need to default into an across-the-board reduction typically used by courts to address block-billing or vague time entries.**

Each time entry submitted reflects legal services rendered in prosecution of necessary actions to advance this litigation to conclusion. *See, e.g., Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 298 (5th Cir. 2007).

Although the prior objections regarding segregation between the efforts expended to reach the first settlement as separated from those claims remaining are no longer relevant, it is anticipated Porcelana will not abandon its never-before utilized, novel "pleaded potential" theory. According to this additional step, the Court is obligated to consider how many individuals could have benefited if Plaintiffs were successful on every claim for every proposed class member at the time of the original pleading, and thereafter adjusted on a sliding scale basis at the time of the certification requests. The "pleaded potential" doctrine created by Porcelana is not permissible in the "private litigant" context, despite Porcelana's inferences otherwise, and much less so in the class action realm. *See, e.g., Rebollar v. Ortega Med. Clinic*, 2019 WL 3975454, at *3 (S.D. Tex. 2019) (rejecting proposal to divide time spent in a necessary deposition simply because the deposition included matters not solely benefiting the settling party).[18] Porcelana has also previously posed a false dilemma to support its "pleaded potential" theory by questioning whether class members should be obligated to pay for services that had the potential to benefit

---

[17] Attached to the BELL-STANTON DECLARATION is the "Final Summary Adjusted Base Lodestar" that summarized the effect of the line-by-line specific reductions in the *Fessler* action for the Court's convenience. [APPX 8]. Porcelana provided limited specific objections to the line-by-line detailed billing entries in the original segregated application – should the Court choose to sustain the specific objections previously asserted against the time entries in the *Fessler* action, it would result in a reduction of Mr. Carpenter's time by 36.3 hours and reduction of Ms. Bell-Stanton's time by 43.3. Porcelana made **no** specific objections to the line-by-line time details in the *Cone* "remaining claims" fee application.

[18] *See also MidCap Media Fin., LLC v. Pathway Data, Inc.*, 2018 WL 7890668, at *4 (W.D. Tex. 2018).

others outside of the prevailing individual plaintiffs and class members. Not only is the underlying premise false (that each time entry must account for who did <u>not</u> benefit as much as whether it was necessary to the prosecution of the case), it is also irrelevant – awarding recovery of the requested fees does not affect the totality of recovery for the class beneficiaries.

### 3. *Prevailing Market Rates in the Community Establish the Hourly Rates Billed herein are Reasonable.*

The Fifth Circuit has held that when counsel's billing rate "is within the range of prevailing market rates, the court should consider this rate when fixing the hourly rate to be allowed." *Sierra Club v. Energy Future Holdings Corp*, 2014 WL 12690022, at *3 (W.D. Tex. 2014) (quoting *Islamic Ctr. of Miss.*, *Inc. v. City of Starkville*, *Miss.*, 876 F.2d 465, 469 (5th Cir. 1989)). Class Counsel's hourly rates are reasonable considering prevailing market rates for lawyers with comparably high levels of experience and expertise in complex class litigation. *See In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig*., 851 F.Supp. 2d 1040, 1087-88 (S.D. Tex. 2012) (attorney's requested hourly rate is *prima facie* reasonable); [Appx 9-12].  The hourly rates charged by Class Counsel are market rates similar to those charged by counsel with expertise in class action and other complex litigation. [*Id.*]. Class Counsel's hourly rates, which range from $125 to $150 for professional support staff and from $300 to $695 for attorneys, are comparable for rates charged by other attorneys with similar background and experience in complex class action litigation. [19] [Appx 1-A; 3-12]

---

[19]       The Court may use its own expertise and judgment to make a determination of the reasonable hourly rate of a paralegal just as it is authorized to do in determining the reasonable hourly rate for attorney services. *MidCap Media Fin., LLC v. Pathway Data, Inc.*, 2018 WL 7890668, at *5 (W.D. Tex. 2018).

Since late-2016, Scott Carpenter spent 2870.60 hours in the prosecution of this case. [APPX 1; 1-A]; Rebecca Bell-Stanton spent 3241.70 hours in the prosecution of this case. [APPX 1; 1-A]. Work performed by associates and paraprofessionals are also reflected in the requested lodestar. [APPX 1; 1-A] In making this Application, Class Counsel has further adjusted its total base lodestar to account for potential billing redundancies and traditional non-billable time between employees.[20]

C.    Enhancement of Class Counsel's Base Lodestar Fee is Well-Deserved.

The determination of a reasonable fee does not end at the multiplication of the number of hours expended on the litigation by the hourly rate - the second step of the lodestar method assesses "whether the lodestar amount should be adjusted upward or downward, depending on the circumstances of the case and based on the factors set out in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974)." *Ceats, Inc. v. TicketNetwork, Inc*., 2019 WL 1857888, at *2 (E.D. Tex. Apr. 25, 2019) (quoting *Rutherford v. Harris Cty., Tex.*, 197 F.3d 173, 192 (5th Cir. 1999); *Union Asset Management Holding, A.G. v. Dell*, 669 F3d 632, 642-643 (5th Cir. 2012); *see also Klein el al. v. O'Neal, Inc. et al*., 705 F.Supp. 2d 632, 680 (N.D. Tex. Apr. 9, 2010) (holding a multiplier was warranted "due to the risks entailed in this lawsuit and the zealous efforts of the attorneys that resulted in a significant recovery for the class").  An upward multiplier in this case is well-justified considering the exceptional nature of the Settlement results. *See, e,g, DeHoyos*,

---

[20]    "There is no precise test for determining whether a task is legal or clerical." *Malick v. NCO Fin. Servs., Inc*., 2015 WL 4078037, at *5 n. 4 (S.D. Tex. 2015).  "Courts have found legal work may include tasks such as assisting with depositions and document production, preparing subpoenas, conducting factual investigation, and compiling data." *Hotels.com, L.P*, 2017 WL 1382553, at *6–7; *see also Malick,* 2015 WL 4078037, at *5 (approving a fee for work on legal tasks that were not as sophisticated as many but, nonetheless, legal in nature, including "factual investigation, * * * assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence")  Additionally, paralegal work can be recovered as a component of attorneys' fees to the extent that the paralegal performs work "traditionally done by an attorney." *Allen v. U.S. Steel Corp*., 665 F.2d 689, 697 (5th Cir. 1982).

240 F.R.D. at 333 (stating the average range of multipliers in class actions is 1.0 to 4.5 and "multipliers on large and complicated class actions have ranged from at least 2.26 to 4.5").

The Fifth Circuit mandates application of the twelve "*Johnson* factors" for enhancement of the base lodestar:[21]

> (1) time and labor required; (2) novelty and difficulty of the questions; (3) skill required to perform the legal service properly; (4) preclusion of other employment by the attorney due to acceptance of the case; (5) customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the action; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Johnson,* 488 F.2d at 717- 19 (5th Cir. 1974); *see also Dell*, 669 F3d at 642 n.25. "Of these factors, the court should give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation, and ability of counsel." *NSEW Holdings LLC v. Wells Fargo Bank, N.A.*, 2017 WL 1030313, at *6–7 (E.D. Tex. 2017) (Mazzant, J.). "The relevance of each of the *Johnson* factors will vary in any particular case, and, rather than requiring a rigid application of each factor, the Fifth Circuit has left it to the lower court's discretion to apply those factors in view of the circumstances of a particular case." *TXU Corp.*, 2005 WL 3148350, at *28. As demonstrated below, each of the relevant *Johnson* factors weighs in favor of the requested fee.[22]

---

[21]     "We must determine whether 'the record clearly indicates that the district court has utilized the *Johnson* framework as the basis of its analysis, has not proceeded in a summary fashion, and has arrived at an amount that can be said to be just compensation.'" *In re High Sulfur Content Gasoline Prod. Liab. Litig.,* 517 F.3d 220, 227 (5th Cir. 2008) (quoting *Forbush,* 98 F.3d at 823).

[22]     Although not a *Johnson* factor, many courts have recognized that the absence, or a minimal number, of objections to a fee request is significant evidence that the requested fee is fair. *See Go Frac, LLC*, 2017 WL 3699350, at *2-3 (class members had notice of the requested fees and did not object); *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 119 (3d Cir. 1990) (even when 29 members of a 281 person class objected, the response of the class as a whole "strongly favors [the] settlement"); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 515 (W.D. Pa. 2003) ("the absence of substantial objections by other class members to the fee application supports the reasonableness of Lead Counsels' request"). Here, both settlement notice programs informed potential Class Members that Counsel would request attorneys' fees to be awarded by the Court, and the original fee applications were posted on the settlement websites.

### 1.   *Factor One: Time and labor required*

Factor one is not wholly subsumed in the base lodestar calculation in all circumstances. Class Counsel has engaged in contested litigation against skilled defense counsel for the past three years and there is still work to be done in seeing this matter to conclusion. [APPX 3].

After this class action lawsuit was filed, Porcelana Corona f/k/a Sanitarios Lamosa withdrew its domesticated presence in Texas and retreated behind the border. The unique labor involved in cross-border litigation supports the requested enhancement.  *Shaw,* 91 F. Supp. 2d at 970 ("As noted above, the time committed by Class Counsel was enormous; but just as important the work performed was difficult. Class Counsel spent long hours weeding through technical material or reviewing data on a computer screen; they underwent the tedium of conducting depositions through translators; and they read piecemeal through discovery documents with the help of a translator.").  This factor supports approval of the requested fee enhancement.

### 2.   *Factor Two: Novelty and difficulty of the questions*

A mainstay of Porcelana's arguments throughout this litigation was, and continues to be, that manufacturing defect cases are not susceptible to class treatment. Indeed, it has all along been a defense position that the class questions posed were novel and required "going bravely where no * * * judge has gone before." [APPX 7, Ex. C].  Additional briefing was ordered on the viability of class treatment arising from a manufacturing defect legal theory (4:17-Dkt.#179) based on Porcelana's continued insistence that certification could never be appropriate absent a design defect claim. [APPX 7].   Although Plaintiffs continually disagreed as to the absolutism of such position, class certification of manufacturing defects are not the norm since they require complex

---

[4:17-Dkt.#262; 4:19-Dkt.#21]. No objection was asserted to the reasonable hourly rate, the number of hours expended, the request for enhancement, or the use of a 2.9 multiplier.  Although the separate fee applications have since been denied as moot in favor of this singular, combined filing, this Court should consider the explicit notification provided to all class members and the absence of question, objection or complaint.

expert statistical analysis and particularized materials and causation experts. Ultimately, despite Plaintiffs' belief that the allegations of the Complaint would ultimately translate into a strong case for liability, Class Counsel was also aware that many risks were involved in proving these claims. Moreover, even though Plaintiffs substantially prevailed as to the multiple motions for summary judgment challenging the Second Amended Class Action Complaint, pursuit of certification after the severance of the national class settlement resulted in a conditional certification of issues only for the remaining claims.  Such issues were still to be tested in a dispositive manner in advance of further certification decisions and there is no guarantee that they would have prevailed had the litigation continued.  Even if Lead Plaintiffs prevailed on the motion for reconsideration or certification, Defendants would have likely continued to vigorously contest the merits for class certification, as well as liability, loss causation, and damages through summary judgment, trial, and appeal. Accordingly, *Johnson* factor two supports approval of the requested fee enhancement.

### 3.  Factors Three and Nine: Skill required to perform the legal service properly; Experience, reputation and ability of the attorneys

The third and the ninth *Johnson* factors – the skill required and the experience, reputation, and ability of the attorneys – are partially subsumed by the first step of the lodestar method.[23] However, in determining a fee enhancement, a court should weigh the standing of opposing counsel as reflective of the challenge faced and "confirms the superior quality of their representation." *Schwartz v. TXU Corp.*, 2005 WL 3148350, *30 (N.D. Tex. 2005).  Here, Defendant was represented by highly experienced lawyers from Hartline Barger, a prestigious and well-respected defense firm, who along with in-house counsel from both Porcelana's Mexico manufacturing location and Corona's Bogota, Columbia corporate offices vigorously and ably

---

[23]     Class Counsel refers and incorporates the arguments and evidentiary proof discussed above as to the reasonableness of the base lodestar fee. and their many years of experience in complex federal civil litigation, particularly in litigation of products liability and other class actions.

defended the Action.  Accordingly, the weight of these two *Johnson* factors is not limited solely to determining base lodestar reasonableness. To the extent *Johnson* factors three and nine are not subsumed in the base lodestar calculation, such factors favor enhancement.

### 4.  Factor Four: Preclusion of other employment.

This factor is neutral in the enhancement analysis so long as the hours expended are compensated under the base fee component of the lodestar method. *OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*, 2015 WL 5021954, at *10 (S.D. Tex. Aug. 24, 2015) (holding that the award of the requested hours subsumed this factor since counsel "could not perform work for other clients" at the same time). Accordingly, although *Johnson* factor four certainly supports the reasonableness of the base lodestar as reflected in the billing records, it is subsumed in the market rate consideration in this matter and neutral as to the requested fee enhancement.

### 5.  Factor Five: Customary fee

The requested hourly rate is derived from the market rates of the community and is well within the range of customary fees for complex products liability class actions.  Typically, "[t]he prevailing rate, unless other factors dictate, is the current rate that is paid to attorneys even though the litigation spans a number of years." *See Pruett v. Harris Cty. Bail Bond Bd.*, 593 F. Supp. 2d 944, 946 (S.D. Tex. 2008). *see also LeBlanc-Sternberg* v. *Fletcher,* 143 F.3d 748, 764 (2d Cir. 1998) ("[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment").  Class counsel, however, has calculated the instant base lodestar using the firm's *historical rates* without the rate increase applied in the contemporaneous billing records for their other class action matters. [Appx 8].  Accordingly, considering counsel's use of original rate assignments despite the three-year delay in compensation, *Johnson* factor five

is not subsumed in the base lodestar calculation and supports approval of the requested fee enhancement.

### 6.  *Factors Six and Ten: Fixed or Contingent Fee; Undesirability of the action*

Considered together in the context of this enhancement request are *Johnson* factors six, "whether the fee is fixed or contingent," and ten, "whether the case was 'undesirable." *See Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 WL 1942227, at *12 (N.D. Tex. 2018). ("[T]he 'risk of non-recovery' and 'undertaking expensive litigation against * * * well financed corporate defendants on a contingent fee' has been held to make a case undesirable, warranting a higher fee."); *see also OneBeacon*, 2015 WL 5021954, at *11. For over three years, Class Counsel undertook this class action on a contingency-fee basis, carrying both the substantial out-of-pocket costs of litigation and the risk of not being paid for their services or reimbursed for their costs.[24]

Litigation of contingent fee cases is fraught with substantial risks and courts act justly in providing additional incentive."[25] "[T]he contingent nature of a suit" supports use of a multiplier. *Graves v. Barnes*, 700 F.2d 220, 222 (5th Cir.1983). Delayed compensation is a significant risk assumed by counsel and this "risk factor" is separate from the rate/time computation. "Class counsel assumed a substantial risk that the litigation would yield no recovery, leaving them uncompensated." *Hotels.com*, 2017 WL 1382553, at *14.[26] As the Fifth Circuit has stated,

---

[24]     Precedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet lost the case despite their advocacy. *Buettgen v. Harless*, 2013 WL 12303194, at *3 (N.D. Tex. 2013) ("The risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. Any fee or expense award has always been at risk and completely contingent on the result achieved.").

[25]     It is an established practice to reward attorneys for taking the risk of non-payment by paying a premium over the prevailing market rate for winning contingency cases.  *See* Richard Posner, Economic Analysis of Law, §21.9. Otherwise, counsel would have little incentive to undertake risky endeavors of litigating against large corporate defendants who will spend millions defending class action claims. *Id.; see also Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981)("lawyers who are to be compensated only in the event of victory are entitled to be paid more when successful than those who are assured of compensation").

[26]     The result is the same whether applying Texas or federal precedent. *Id.* at *15.

"[l]awyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of result." *Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981), *overruled on other grounds by Int'l Woodworkers of Am., AFL-CIO & Its Local No. 5-376 v. Champion Int'l Corp.*, 790 F.2d 1174 (5th Cir. 1986). Class counsel invested nearly $400,000 in direct case expenditures and thousands of hours' work was performed not only by the submitted timekeepers themselves, but also not reflected in this number is the time and work performed by support staff who must be paid by the firm each pay period, with no assurance the named attorney or firm would receive any remuneration whatsoever, and with no assurance the expenses they, also, incurred would be, in any way, reimbursed. [Appx 2;7]  In light of the significant legal and scientific questions inherent in this case, the risk taken was great and the contingent nature of recovery uncertain.

The undesirability of a case can be a factor in justifying the award of a requested fee. Class Counsel prosecuted a difficult manufacturing defect class action for more than three years despite the retraction of domestic corporate status, elevated risks, extensive discovery, high out-of-pocket costs, and a possibility of no recovery. *See Halliburton*, 2018 WL 1942227, at *12 ("[T]he 'risk of non-recovery' and 'undertaking expensive litigation against * * * well financed corporate defendants on a contingent fee' has been held to make a case undesirable, warranting a higher fee."); *Harless*, 2013 WL 12303194, at *3 (similar). This was not an easy case, and the risk of no recovery was substantial throughout.

Accordingly, these factors support approval of the requested fee enhancement. *See, e.g., OneBeacon,* 2015 WL 5021954, at *13 (applying a multiplier of three to account for the contingent

---

nature and undesirability of the case).[27] Class counsel spent years litigating this action against a large multi-national corporation that abandoned its stateside incorporation upon the filing of this suit. Plaintiffs refer to and incorporate prior briefing and arguments as weight given to tackling technical material and depositions presented in a foreign language that stretch beyond the mere calculation of expended time as a basis for enhancement under this factor.[28] *See Harless,* 2013 WL 12303194, at *3 ("The risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. Any fee or expense award has always been at risk and completely contingent on the result achieved.")

### 7. *Factors Seven and Eleven: Time limitations; Nature and length of the professional relationship with the client*

The public policy and pertinent factual bases behind factors seven and eleven are not implicated in this litigation beyond the other fee elements already considered.

### 8. *Factor Eight: Amount involved and the results obtained*

It is an undeniable fact that as a result of this litigation, Class Counsel secured substantial benefits for tens of thousands of class members that collectively own hundreds of thousands of toilet tanks, including: cash reimbursement of up to $300 per tank replacement; cash reimbursement of up to $4,000 for property damage; and non-monetary protections.[29]   Both settlements also provide relief based on information only obtained because of this embattled litigation – an independently administered replacement program, a lengthy extension of warranty

---

[27]   *Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 WL 1942227, at *12 (N.D. Tex. 2018). ("[T]he 'risk of non-recovery' and 'undertaking expensive litigation against * * * well financed corporate defendants on a contingent fee' has been held to make a case undesirable, warranting a higher fee."); *see also Hotels.com, L.P.*, 2017 WL 1382553, at *15.

[28]   *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F.Supp. 929, 942 (E.D.Tex. 2000).

[29]   Benefit, in the context of this *Johnson* factor, is not limited to monetary relief or the value of the property right protected. *Shaw*, 91 F. Supp. 2d at 971 ("When considering the quality of the proposed Settlement Agreement, this Court considered both the monetary and the non-monetary benefits the class is to receive.")

that includes reimbursement for replacement costs and not merely product, and modification of releases originally requiring a complete waiver of warranty to now provide a five-year warranty. [APPX 3; 4]. This factor weighs heavily in favor of enhancement of the base lodestar.

"It is important to recognize that in some class actions the monetary relief obtained is not the sole determinant of an appropriate attorney fee award." FED. R. CIV. P. 23(h), 2003 advisory cmt.  Indeed, a traditional "common fund" not essential and specific monetary recovery is not a prerequisite for appreciating the value of the class benefits.  An enhancement of a calculated fee is appropriate where the litigation confers a "substantial nonpecuniary benefit" on the members of an ascertainable class through injunctive or declaratory relief, even when the value of such relief is imprecise.  Recovery of Attorney Fees, RUTTER GROUP PRAC. GUIDE FED. CIV. TRIALS & EV. CH. 19-B (2019); *see also Mills v. Electric Auto-Lite Co*., 396 US 375, 393 (1970). The Settlements provide significant monetary and non-monetary benefits for individuals that were otherwise without remedy.[30]

The benefit to the class is not subject to counsel's speculation of the final number of claims, the ultimate requisite expenditure of monetary funds, total number of replacement product conveyed, or final number of warranty claims.  Such guesswork is **not** a part of the analysis in a case with clear constructive fund or substantial benefit doctrines. Certainly, there is no requirement that an attorney fee award be proportional to the amount of damages recovered. *Combs v. City of Huntington*, 829 F3d 388, 396 (5th Cir. 2016).  Porcelana cannot use the current state of claims designated for payment as an end-run around appreciating the substantial benefits conferred to the settlement classes, one of which provides warranty benefits up through December 31, 2021.

---

[30]  Benefit, in the context of *Johnson*, is not limited to monetary relief or the value of the property right protected. *Shaw*, 91 F. Supp. 2d at 971. "From a consumer's perspective, a warranty against repair has value even when no repairs are claimed during the period of coverage. The fact of coverage is its own benefit * * *." *In re Volkswagen & Audi Warranty Extension.*, 89 F. Supp. 3d 155, 168–69 (D. Mass. 2015).

Neither opposing counsel nor Porcelana are experts in claims rate projections in products liability class actions, and unsubstantiated predictive hypotheticals simply cannot form the evidentiary basis for ignoring the *Johnson* factors supported by the actual record in this matter.

> 9.  *Factor Twelve: "similar cases"*

Factor twelve in large part falls outside of fee enhancement in this matter "because cases like these do not have 'customary fees'" considering the complexity of the class action process. *Halliburton*, 2018 WL 1942227, at *11.  Certainly, the requested multiplier of the lodestar fee is similar and consistent with complex class action litigation. [APPX 6].

## III. CLASS COUNSEL'S REQUEST FOR REIMBURSEMENT OF ALL EXPENSES AND COSTS IS REASONABLE AND CONSISTENT WITH THIS DISTRICT AND FIFTH CIRCUIT PRECEDENT

In addition to attorneys' fees, attorneys in a class action may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters. *Mills v. Electric Auto-Ute Co.*, 396 U.S. 375, 391-92 (1970). Class Counsel advanced expenses in the form of cash for years with no guarantee of recovery, and to date, no reimbursement. These costs have been adequately documented and were reasonably incurred for the benefit of the Settlement Class. [APPX 2; 7]. Such expenses include: deposition costs; court reporting fees; fees for experts and investigators; online legal research costs; travel and lodging expenses; subpoena costs; third-party vendors; evidence storage; copying; and mail. Courts routinely permit the reimbursement of similar expenses. *Halliburton*, 2018 WL 1942227, at *14. Additionally, the Notice Plan informed potential Class Members that Class Counsel would seek reimbursement of expenses up to $500,000, and, to date, no objection to the expense application has been filed. [APPX. 2; 3; 4]. The requested expenses should, therefore, be awarded. *See Go Frac, LLC*, 2017 WL 3699350, at *2-3 (awarding expenses in the absence of objections).

As promised to the settlement class members in the notice materials as well as to the Defendant, Class Counsel is not seeking reimbursement greater than $500,000 in incurred costs and expenses. [APPX 3; 4]. Class counsel requests reimbursement of litigation expenses in the amount of **$373,476.05** all of which were reasonably and necessarily incurred in prosecuting and resolving the Action. [APPX 2]. Class Counsel respectfully requests full reimbursement of these documented costs and expenses in accordance with the terms of the Settlement.

## CONCLUSION

In consideration of the extensive efforts and exceptional results achieved for the Settlement Class, Class Counsel hereby apply for approval of the requested fees, which are to be calculated in accordance with Fifth Circuit precedent for establishing the base lodestar of incurred fees and application of the *Johnson* factors for the final determination of reasonableness. The Settlements provide cash compensation for replacement of Class Tanks installed throughout the nation, cash reimbursement of costs incurred for prior replacement/installation, cash reimbursement of costs incurred from property damage, and expansive warranty benefits. The requested fee and expense awards are "separate and apart from the class settlement" and "will not in any way diminish" the benefits received by the Class. *DeHoyos,* 240 F.R.D. at 322. "Were the Court to reduce the award of class counsel's fees, this would not confer a greater benefit upon the class, but rather would only benefit [Defendant]." *Id.* Plaintiffs, therefore, respectfully request this Honorable Court grant this Application in full, make the necessary factual findings under the Fifth Circuit requirements, and order the Defendant to pay the requested award of the base lodestar fee enhanced by a multiplier, and an award of all litigation costs and expenses requested herein.

Respectfully submitted,

*/s/ N. Scott Carpenter*
**N. SCOTT CARPENTER**
State Bar No. 00790428
**REBECCA E. BELL-STANTON**
State Bar No. 24026795
CARPENTER & SCHUMACHER, P.C.
2701 NORTH DALLAS PARKWAY, SUITE 570
Plano, Texas 75093
(972) 403-1133
(972) 403-0311 [Fax]
scarpenter@cstriallaw.com
rstanton@cstriallaw.com

*ATTORNEYS FOR PLAINTIFFS AND*
*PROPOSED SETTLEMENT CLASS*

## CERTIFICATE OF SERVICE

I certify that on the 9th day of March, 2020 that the foregoing was served to all counsel of record either by hand delivery, U.S. Mail, postage pre-paid, facsimile, electronically, and/or *via* the Court's CM/ECF document filing system.

*/s/ Rebecca Bell-Stanton*
**REBECCA BELL-STANTON**