# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| MARK AND AMBER FESSLER, ANDREW HOCKER, KEVIN REUSS, MATTHEW CARRERAS, CHARLES AND MICHELLE HANDLY, AARON AND STACEY STONE, and DANIEL AND SHARON SOUSA, on Behalf of Themselves and Those Similarly Situated | § § § § § § § § § | Civil Action No.  4:19-cv-00248 Judge Mazzant |
| v. | § § | |
| PORCELANA CORONA DE MÉXICO, S.A. DE C.V f/k/a SANITARIOS LAMOSA S.A. DE C.V. a/k/a Vortens | § § § | |

*AND*

| | | |
|---|---|---|
| STEVEN AND JOANNA CONE, MARK AND AMBER FESSLER, ANDREW HOCKER, MATTHEW CARRERAS, CHARLES AND MICHELLE HANDLY, AARON AND STACEY STONE, and DANIEL AND SHARON SOUSA, on Behalf of Themselves and Those Similarly Situated | § § § § § § § § § | Civil Action No.  4:17-CV-00001 Judge Mazzant |
| v. | § § | |
| PORCELANA  CORONA  DE  MÉXICO, S.A. DE C.V f/k/a SANITARIOS LAMOSA S.A. DE C.V. a/k/a Vortens | § § § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Nathan Carpenter and Rebecca Bell-Stanton's (collectively,

"Class Counsel") Motions for Approval of Award of Attorneys' Fees and Request for

Reimbursement of Litigation Expenses (Dkt. #46; Dkt. #275).[1]  Having considered the motions and the relevant pleadings, the Court finds that the motions should be granted in part and denied in part.

## BACKGROUND

The background and procedural history were well summarized in Class Counsel's motion (Dkt. #46 at pp. 9–11).  As a brief recap: this action arises from alleged manufacturing and/or marketing defects in certain ceramic Vortens toilet tanks.  The toilet tanks at issue were manufactured, designed, produced, and distributed by Sanitarios Lamosa, now known as Porcelana Corona.  *See* Case No. 4:17-CV-00001, (Dkt. #74 at ¶¶ 16-17).

After a mediation conference on August 28, 2018, the parties reached a partial settlement with respect to past and current owners of Vortens tank models #3412 and #3464 manufactured between January 1, 2011, through December 31, 2011, who previously expended funds to repair and replace tanks.  *See* Case No. 4:17-CV-00001, (Dkt. #194 at p. 9).  And after a mediation conference on October 16, 2018, the parties further resolved claims brought by owners of tank models #3412 and #3464 manufactured between January 1, 2011, and December 31, 2011, providing relief to class members that incurred property damage other than to the product itself. *See* Case No. 4:17-CV-00001, (Dkt. #194 at 10).  However, the parties were originally unable to reach agreement regarding Plaintiffs' remaining claims.  *See* Case No. 4:17-CV-00001, (Dkt. #188).

---

[1] Because this is a consolidated fee-award application, two identical motions, responses, replies, and sur-replies were filed in the above-captioned cases.  Throughout this Order, the Court will usually only cite to one of these filings, and unless otherwise noted, citations to the Motion (Dkt. #46); the response (Dkt. #48); the purported waiver of the reply (Dkt. #49); or the sur-reply (Dkt. #53) can be found on the docket of Case No. 4:19-CV-00248, while any citations to Dkt. #275; Dkt. #277; Dkt. #278; or Dkt. #282—which are the identical filings, respectively—are located on the docket of Case No. 4:17-CV-00001.

On April 2, 2019, the Court granted Plaintiffs' Motion to Sever the distinct and severable subclass of owners of tank models #3412 and #3464—the "2011 Settlement Class"—in order to render final judgment on those settled claims while a second motion for class certification on numerous unresolved claims—the "Remaining Claims"—was pending before the Court.  *See* Case No. 4:19-CV-00258, (Dkt. #2 at pp. 1–2).  On June 18, 2019, Class Counsel for Plaintiffs filed their Motion for Approval of Service Awards, Award of Attorneys' Fees, and Request for Reimbursement of Litigation Expenses for the newly severed 2011 Settlement Class.  *See* Case No. 4:19-CV-00248, (Dkt. #21).  Briefing of this motion was completed on July 26, 2019.  *See* Case No. 4:19-CV-00248, (Dkt. #27).  On August 29, 2019, the Court held a hearing on the parties' Joint Motion for Final Approval of Settlement.  *See* Case No. 4:19-CV-00248, (Dkt. #32).  The Court approved the settlement for the 2011 Settlement Class but noted that the determination of Class Counsel's reasonable fees and costs to be paid by Defendant would be addressed in a separate order.  *See* Case No. 4:19-CV-00248, (Dkt. #41 at p. 6).

But then, after the Court took Class Counsel's fee application for the 2011 Settlement Class under advisement, the parties were able to settle the Remaining Claims.  (Dkt. #46 at p. 11).  Class Counsel submitted a second application for attorneys' fees on the basis of this new settlement; however, Class Counsel expressed concern about the impact a ruling on the first fee application in the 2011 Settlement Class would have on the second fee application (Dkt. #46 at p. 11). Accordingly, the Court held a telephonic hearing and suggested that Class Counsel submit a consolidated fee application to address the appropriate award of attorneys' fees for the entire case—essentially, treating the fee application as if the 2011 Settlement Class had not been severed from the Remaining Claims.  No party objected, and the Court denied Class Counsel's original motion for attorneys' fees as moot.  *See* Case No. 4:19-CV-00248, (Dkt. #44).

3

Class Counsel submitted its consolidated Motion for Approval of Award of Attorneys' Fees and Request for Reimbursement of Litigation Expenses on March 9, 2020 (Dkt. #46). Defendant filed its response on March 19, 2020 (Dkt. #48).  On March 20, 2020, Class Counsel filed a notice purporting to waive its reply; yet Class Counsel included four annotated cases and a new proposed order along with this "waiver." (Dkt. #49).[2]  Recognizing that there was a need to respond to the case law and revised proposed order submitted by Class Counsel, see Case No. 4:19-CV-00248, (Dkt. #50), Defendant filed its sur-reply on March 27, 2020 (Dkt. #53).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 23(h), "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  In "determining a fee for class counsel, the court's objective is to ensure an overall fee that is fair for counsel and equitable within the class." FED. R. CIV. P. 23, advisory committee's notes to 2003 amendment.

"Although exacting judicial review of fee applications may be burdensome, it is 'necessary to discharge the [court's] obligation to award fees that are reasonable and consistent with governing law.'" *In re High Sulfur Content Gasoline Prod. Liab. Litig.*, 517 F.3d 220, 228 (5th Cir. 2008) (quoting *Manual for Complex Litigation* § 14.231 (4th ed. 2004) (alteration in original)).  Courts within the Fifth Circuit use the "'lodestar method' to 'assess attorneys' fees in class action suits.'" *Id.* (quoting *Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 850 (5th Cir. 1998)).[3]  To calculate the lodestar, the Court determines the reasonable number of hours spent on

---

[2] During the telephonic hearing, the Court committed to deciding this issue within thirty days of the new briefing being completed—that may explain why Class Counsel attempted to waive its reply.  But the Court agrees with Defendant: Class Counsel's attempted waiver opened the door to Defendant's sur-reply.

[3] *In re High Sulfur* actually explains that district courts are "require[d]" to use the lodestar method.  517 F.3d at 228. This mandatory language has been questioned by the Fifth Circuit in subsequent cases. *See Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 644 (5th Cir. 2012) (reasoning that the "percentage method" may be proper

the litigation and the reasonable hourly rate for the participating attorney—the Court multiplies the two numbers, which represents the base lodestar. *Id.*

After calculating the lodestar, the Court "must scrutinize a fee award under the [twelve *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)] factors . . . ." *Id.* The Court does not need to be "meticulously detailed" in its *Johnson* analysis, but it must articulate and apply the correct criteria. *Id.* (quotation omitted). Although the lodestar is presumed reasonable, the Court may enhance or decrease it after evaluating the twelve *Johnson* factors. *E.g.*, *Combs v. City of Huntington*, 829 F.3d 388, 392 (5th Cir. 2016).

Even when the parties can agree on the fee-award amount, the Court has an independent duty to ensure that attorney's fees are reasonable. *Slipchenko v. Brunel Energy, Inc.*, No. CIV.A. H-11-1465, 2015 WL 338358, at *15–16 (S.D. Tex. Jan. 23, 2015) (citation omitted). Awarding attorney's fees is within the discretion of the Court, and the Court's factual determinations are only reviewed for clear error. *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

## ANALYSIS

"Courts, including in the Fifth Circuit, 'have encouraged litigants to resolve fee issues by agreement, if possible.'" *Slipchenko*, 2015 WL 338358, at *15 (citing *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 322 (W.D. Tex. 2007) (collecting cases)). The parties here have agreed that "Defendant shall pay any Court-approved amount of attorney fees and costs" (Dkt. #46, Exhibit 3 at p. 17; Dkt. #46, Exhibit 4 at p. 15). The parties have also agreed that "the Court's determination of a reasonable award of attorney fees and costs to Class Counsel . . . shall be governed by federal

---

for calculating attorney's fees under the common-fund approach, notwithstanding *In re High Sulfur*'s mandatory language). But, in cases like this one—"that is, cases involving fee-shifting among parties and not involving a common fund—the lodestar method is still preferred by courts." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 674 (N.D. Tex. 2010) (citing *Gisbrecht v. Barnhart*, 535 U.S. 789, 801–02 (2002)).

law . . ." (Dkt. #46, Exhibit 3 at p. 21; Dkt. #46, Exhibit 4 at p. 19).[4]  And Defendant does not dispute Class Counsel's billing rates (Dkt. #48 at p. 5).  But the agreements end there.  Class Counsel and Defendant cannot agree on how to calculate of the lodestar, whether enhancement or reduction of the lodestar is warranted under the *Johnson* factors, or the amount of litigation expenses and costs to be awarded to Class Counsel.

Class Counsel submit that the lodestar is $4,388,405.50 and argue that a multiplier of 2.9 based on the *Johnson* factors is warranted.  (Dkt. #46 at pp. 11, 17).  By the Court's calculation, this comes out to a request for $12,726,376.00 in attorneys' fees.  Class Counsel also request $373,476.05 for their litigation expenses (Dkt. #46 at p. 33).

Defendant takes exception with all of Class Counsel's calculations.   Specifically, Defendant disputes: (1) the hours Class Counsel purportedly expended on the successful claims; (2) the application of a multiplier; and (3) the amount of Class Counsel's claimed litigation expenses (Dkt. #48 at pp. 5–6).  Defendant also appears to seek a separate reduction of the lodestar under the results-obtained *Johnson* factor, which Defendant treats as distinct from its argument that the lodestar should be reduced by a variety of percentages to account for Class Counsel's limited success.  *Compare* (Dkt. #48 at pp. 8–12) ("A reasonable fee award is 6.25% of Plaintiffs' attorneys' reasonable and necessary time, billed at a reasonable hourly rate, for work from [January 18, 2018—November 19, 2018] . . . . A reasonable fee award is 11.76% of Plaintiffs' attorneys'

---

[4] In their initial briefing on attorneys' fees related to the 2011 Settlement Class, the parties cited—almost exclusively—to Texas state-court cases and Fifth Circuit cases applying Texas law.  But neither party asserted that Texas law applied to the fee-award analysis, and neither party disputed their contractual decision that federal law governs the fee-award determination.  *Cf. In re Volkswagen & Audi Warranty Extension Litig.*, 692 F.3d 4, 14–16 (1st Cir. 2012) (explaining that in a class-action settlement where "[t]he settlement agreement itself has no agreement that federal law applies," state-law principles govern the award of fees); *see also Champion v. ADT Sec. Services, Inc.*, 2:08-CV-417-TJW, 2010 WL 4736908, at *3 n.1 (E.D. Tex. Nov. 16, 2010) (stating that, with limited exceptions not applicable to this case, "[f]ederal choice of law rules dictate that federal courts should honor the parties' choice of law clause . . . .").  The parties have largely corrected this in their consolidated briefing—though Defendant continues to cite some Texas law with no explanation about why the cited Texas law is applicable in light of the parties' choice of law.  *See* (Dkt. #48 at p. 6).

reasonable and necessary work, billed at a reasonable hourly rate, from [November 19, 2018— June 15, 2019]," *with* (Dkt. #48 at pp. 28–29) ("As set forth in Section I, Plaintiffs had limited success . . . . After calculating the lodestar, the Court then considers whether the circumstances of the particular case warrant an upward or *downward* lodestar adjustment.") (quotations and citations omitted) (emphasis in original).

When faced with an argument like Defendant makes here—that Class Counsel's requested fee is inflated by work done to further unsuccessful but intertwined claims—the Court has two options: (1) it may attempt to identify the specific hours that should be eliminated; or (2) it may reduce the award to account for the limited success. *See Hensley v. Eckerhart*, 461 U.S. 424, 436–37 (1983). Although this "results obtained" analysis is "usually [] subsumed" within the lodestar, the Court may address it instead when analyzing whether enhancement or reduction is appropriate under the *Johnson* factors. *See Hensley*, 461 U.S. at 434 & n.9; *Combs v. City of Huntington*, 829 F.3d 388, 392–93 (5th Cir. 2016) ("In this circuit, courts apply a two-step method for determining a reasonable attorney's fee award. The court must first calculate the lodestar, . . . [which] the court may enhance or decrease [] based on the twelve *Johnson* factors . . . .") (internal citations omitted). The key is simply that the Court does not consider Defendant's argument under *both* its lodestar calculation and its *Johnson*-factor analysis, which would result in "impermissible double counting." *See Saizan v. Delta Concrete Products Co., Inc.*, 448 F.3d 795, 800 (5th Cir. 2006).

As demonstrated by Defendant's suggested percentage reductions to the lodestar, it is difficult—if not practically impossible—to attempt to identify specific hours that should be eliminated in a case like this, where all claims shared a common core of facts and were based on related legal theories. *See Hensley*, 461 U.S. at 435. Even if Defendant had not chosen to advocate for a reduction of the lodestar under the *Johnson* factors, Defendant's argument is better suited for

consideration under the *Johnson* factors rather than in the computation of the base lodestar. Defendant does not seek line-item reduction of the lodestar due to "excessive, duplicative, or inadequately documented" time.  *See Combs*, 829 F.3d at 392.  Instead, the core of Defendant's argument is that the lodestar should be decreased proportionally to reflect the relative level of Class Counsel's success.  This concern is squarely reflected in the *Johnson* factors, see *id.* at 391 n.1, which the Court can use to "enhance *or decrease*" the lodestar.  *Id.* at 392 (emphasis added).

Accordingly, the Court first determines the base lodestar by calculating the product of reasonable hours times a reasonable rate, removing any duplicative or unnecessary hours in the billing submitted by Class Counsel.  Then, the Court analyzes the *Johnson* factors to determine whether the lodestar should be adjusted upward as Class Counsel suggests, or whether it should be adjusted downward as Defendant suggests.[5]

After conducting the analysis described above, the Court determines that the base lodestar is $4,333,949.50.  The Court calculates this base lodestar by reviewing and accepting Class Counsel's proposed hourly rates, adjusting the hours submitted by Class Counsel to account for several unnecessary and duplicative submissions, and then multiplying the two numbers.  But that computation "does not end the inquiry."  *Hensley*, 461 U.S. at 434.  After reviewing the *Johnson* factors, paying particular attention to the results-obtained factor, the Court finds that neither enhancement nor reduction of the lodestar is appropriate.  Further, after reviewing Class Counsel's submitted litigation expenses and costs for reimbursement, the Court determines that Class

---

[5] This is the framework endorsed by the Supreme Court in *Hensley*.  *See* 461 U.S. at 434–36 (explaining that "most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," but that the inquiry is not ended until the Court then determines whether to adjust the fee upward or downward after considering other factors, including the "important factor" of "results obtained").

Counsel is awarded $371,354.98 in litigation expenses and costs that were reasonable and necessary to prosecuting and settling these class actions.

## I.  Computation of the Lodestar

The Court "begin[s] by calculating the lodestar: the reasonable hours expended multiplied by a reasonable rate." *Combs*, 829 F.3d at 394.  In deciding a fee award, the Court may rely on its own experience. *See Mesa Petroleum Co. v. Coniglio*, 629 F.2d 1022, 1030 (5th Cir. 1980) (citations omitted).

Class Counsel submits that the lodestar is $4,388,405.50 (Dkt. #46 at p. 11).   Class Counsel's Master Lodestar Spreadsheet summarizes this lodestar calculation:

| Time Keeper | Rate | Total Hours | Base Lodestar |
|---|---|---|---|
| N. Scott Carpenter | $695 | 2890.6 | $2,008,967.00 |
| Rebecca Bell-Stanton | $675 | 3241.7 | $2,188,147.50 |
| Doug Heuval | $525 | 88.1 | $46,252.50 |
| Sabina Pincus | $425 | 82.4 | $35,020.00 |
| Anthony LaScalea | $300 | 21.1 | $6,330.00 |
| Veronica Negron | $140 | 93.0 | $13,020.00 |
| Enrica Peters | $140 | 65.4 | $9,156.00 |
| Bridget Holley | $125 | 652.1 | $81,512.50 |
| | | 7134.4 | $4,388,405.50 |

(Dkt. #46, Exhibit 1).

Defendant has two main problems with Class Counsel's computation: (1) Defendant argues that the correct way to compute the lodestar is to determine the percentage of work that benefited the successful class members by comparing the number of potential classes identified in Plaintiffs' complaints with the number of classes actually settled; and (2) Defendant asserts that the lodestar

should be generally reduced to account of Class Counsel's limited success (Dkt. #48 at pp. 5–12, 28–29).  As the Court already discussed, it will address these concerns in its analysis of the *Johnson* factors.  So, the Court calculates the base lodestar—which is the "most useful starting point"— simply by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate.  *E.g.*, *Hensley*, 461 U.S. at 433; *Combs*, 829 F.3d 388, 391–92.

## A. Reasonable Rate

Before turning to the crux of the dispute, the Court assesses the rates submitted by Class Counsel.  "The reasonable hourly rate is the rate 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'"  *BMO Harris Bank, N.A. v. RidgeAire, Inc.*, 2014 WL 12612803, at *1 (E.D. Tex. June 4, 2014) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 & n.11 (1984)).  The relevant legal community is the community where the district court sits.  *See Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002).  And the Court itself is "an expert in attorneys' fees and 'may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment with or without the aid of witnesses as to value.'"  *Johnson v. Big Lots Stores, Inc.*, 639 F. Supp. 2d 696, 702 n.1 (E.D. La. 2009) (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940)).

Class Counsel's submitted hourly rates are as follows:

| | |
|---|---|
| N. Scott Carpenter | $695 |
| Rebecca Bell-Stanton | $675 |
| Doug Heuval | $525 |
| Sabina Pincus | $425 |
| Anthony LaScalea | $300 |
| Veronica Negron | $140 |
| Enrica Peters | $140 |
| Bridget Holley | $125 |

(Dkt. #20, Exhibit 1).

"An attorney's requested hourly rate is prima facie reasonable when he requests that the lodestar be computed at his or her customary billing rate, the rate is within the range of prevailing market rates[,] and the rate is not contested."  *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1087 (S.D. Tex. 2012) (quotation and citation omitted) (alteration in original).

Class Counsel requests that the lodestar be calculated using their billing rates for a case of this nature (Dkt. #46, Exhibit 7 at ¶¶ 39, 41, Exhibit 8 ¶ 11).  Defendant does not contest Class Counsel's hourly rates (Dkt. #48 at p. 5), and Class Counsel's rates, while on the higher end, are within the prevailing, current market rates.  Accordingly, the Court finds that the hourly rates submitted by Class Counsel are reasonable.

To support its submitted rates, Class Counsel commissioned and submitted a survey conducted by the National Association of Legal Fee Analysis ("NALFA") (Dkt. #46, Exhibit 7 ¶ 35).  The sample of the NALFA survey was Dallas-Fort Worth metropolitan area plaintiffs' counsel practicing in consumer related or products liability class-action work (Dkt. #46, Exhibit 8 ¶ 12).  Class Counsel's submitted hourly rates, while on the higher side, falls within the accepted range (Dkt. #46, Exhibit 9).  This is further confirmed by the declarations of Dallas-area litigators submitted by Class Counsel (Dkt. #46, Exhibits 10–12).

And even without resorting to these surveys and declarations, under the Court's independent knowledge and expertise in attorney's fees, it finds that Class Counsel's submitted hourly rates are reasonable and proper for attorneys with their many years of class actions and complex litigation experience.  The same hold true for the rates submitted by Class Counsel for

the paralegals who worked on this case.  Accordingly, the Court will use Class Counsel's submitted hourly rates to calculate the lodestar.

### B.  Reasonable Hours

Having determined that Class Counsel's submitted hourly rates are reasonable, the Court must now analyze the reasonable hours worked by those timekeepers in order to calculate the lodestar.  First, the Court reviews the submitted billing and deducts any time Class Counsel spent on duplicative or unnecessary work.  Next, the Court calculates the lodestar by multiplying the number of hours worked and the reasonable fee.

"The party seeking attorneys' fees must present adequately recorded time records." *Murphy v. ABA Ranch, LLC*, 4:17-CV-00215, 2018 WL 3656480, at *1 (E.D. Tex. Aug. 2, 2018) (citing *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993)).  So, the Court uses Class Counsel's submitted time as a "benchmark and then exclude[s] any time that is excessive, duplicative, unnecessary, or inadequately documented." *Id.*

In the now-mooted briefing on Class Counsel's first fee award application in Case No. 4:19-CV-00248, Defendant made several line-by-line objections to Class Counsel's billing as duplicative or unnecessary.  *See* Case No. 4:19-CV-00248, (Dkt. #23, Exhibit 1).  In submitting this consolidated fee application, Class Counsel made several suggested adjustments to account for the previous objections raised by Defendant (Dkt. #46 at p. 21 n.17; Dkt. #46, Exhibit 8).  While it does not appear to the Court that Defendant carried these now-mooted objections over into the live briefing, see (Dkt. #48), the Court has an independent duty to ensure that attorney's fees are reasonable.  After reviewing Class Counsel's submitted billing, the Court finds that several of the entries are duplicative or unnecessary.  And the Court determines that Class Counsel's suggested reductions of duplicative and unnecessary tasks—resulting in a reduction of Mr. Carpenter's time

by 36.3 hours and a reduction of Ms. Bell-Stanton's time by 43.3 hours—correctly accounts for the duplicative billing entries (Dkt. #46 at p. 21 n.17; Dkt. #46, Exhibit 8).  Thus, below are the final, adjusted hours assigned to each timekeeper to be used in the lodestar calculation:

| Time Keeper | Total Hours |
|---|---|
| N. Scott Carpenter | (2890.6 – 36.3) = **2,854.3** |
| Rebecca Bell-Stanton | (3241.7 – 43.3) = **3,198.4** |
| Doug Heuval | 88.1 |
| Sabina Pincus | 82.4 |
| Anthony LaScalea | 21.1 |
| Veronica Negron | 93.0 |
| Enrica Peters | 65.4 |
| Bridget Holley | 652.1 |

## C.  Base Lodestar Calculation

After approving Class Counsel's submitted hourly rate and adjusting Class Counsel's submitted billing to account for duplicative and unnecessary entries, the Court multiplies each timekeeper's hourly rate by the respective number of hours worked to get the base lodestar.  As seen in the chart below, the base lodestar is $4,333,949.50:

| Time Keeper | Rate | Total Hours | Base Lodestar |
|---|---|---|---|
| N. Scott Carpenter | $695 | 2,854.3 | $1,983,738.50 |
| Rebecca Bell-Stanton | $675 | 3,198.4 | $2,158,920.00 |
| Doug Heuval | $525 | 88.1 | $46,252.50 |
| Sabina Pincus | $425 | 82.4 | $35,020.00 |
| Anthony LaScalea | $300 | 21.1 | $6,330.00 |
| | | | |

| Veronica Negron | $140 | 93.0 | $13,020.00 |
|---|---|---|---|
| Enrica Peters | $140 | 65.4 | $9,156.00 |
| Bridget Holley | $125 | 652.1 | $81,512.50 |
| | | | $4,333,949.50 |

Yet, the inquiry is not over.  The Court now must analyze the relevant *Johnson* factors to determine whether enhancement or reduction of the lodestar is warranted.

**II.    Analysis of the Relevant *Johnson* Factors**

The lodestar is presumed reasonable.  *Combs*, 829 F.3d at 394.  But the Court "may []" determine whether any other considerations counsel in favor of enhancing or decreasing the lodestar."  *Id.* at 394–95.  The party seeking adjustment of the lodestar has the burden of proving that the adjustment is necessary for the calculation of a reasonable fee.  *Blum v. Stenson*, 465 U.S. 886, 898 (1984) (explaining that the burden is on the fee applicant to prove why an upward adjustment is necessary); *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 329 (5th Cir. 1995) (quoting *U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 413 (2d Cir. 1989) (explaining that the party requesting reduction of the lodestar has the burden of establishing that a reduction is justified)).

The Court scrutinizes whether the fee award should be altered by considering the *Johnson* factors.  *In re High Sulfur*, 517 F.3d at 228.  The twelve *Johnson* factors are:

(1) the time and labor required to represent the client or clients; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Saizan*, 448 F.3d at 800 n.18 (5th Cir. 2006) (citing *Johnson*, 488 F.2d at 717–19). "[E]nhancements [] must be rare because, instead of merely guaranteeing adequate representation, they can result in a windfall to attorneys." *Combs*, 829 F.3d at 393 (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 559 & n.8 (2010)).  Even "excellent results should usually result only in 'a fully compensatory fee'—the lodestar." *Id.* (quoting *Hensley*, 461 U.S. at 435).

Class Counsel submit that they are entitled to a 2.9 multiplier to the base lodestar (Dkt. #46 at p. 11).[6]  Specifically, Class Counsel believes an enhancement is warranted because: (1) this three-year case involved complex cross-border litigation, and Class Counsel argued against skilled defense attorneys; (2) Class Counsel overcame Defendant's argument that manufacturing defect cases are not susceptible to class treatment, which Class Counsel acknowledge presented risks to Plaintiffs' claims; (3) Class Counsel calculated the base lodestar with their historical hourly rate, not with their current hourly rate; (4) contingent-fee cases are fraught with risk, necessitating a multiplier, particularly in an undesirable case like this one; and (5) Class Counsel "secured substantial benefits for tens of thousands of class members that collectively own hundreds of thousands of toilet tanks," supporting an enhancement no matter the final number of claims. *See* (Dkt. #46 at pp. 23–32).[7]

Defendant opposes any enhancement—and more than just oppose an enhancement, Defendant seeks a reduction of the lodestar, arguing that the results Class Counsel obtained

---

[6] As Defendant points out, Class Counsel's reply included an anomalous request for a *2.9%* multiplier (Dkt. #53 at p. 7).  Given Class Counsel's otherwise consistent requests for a 2.9-time multiplier, the Court treats the request for a 2.9% enhancement as an innocuous mistake—particularly since Defendant made the same error in its response (Dkt. #48 at p. 25).

[7] Class Counsel also argues that, to the extent the skill, reputation, and ability of the attorneys were not subsumed in the lodestar, those factors warrant an enhancement (Dkt. #46 at pp. 26–27).  But the Court already accounted for these factors in the lodestar, noting that despite being on the higher end of the range, Class Counsel's hourly rate was reasonable given their experience.  And Class Counsel concedes that factors seven, eleven, and twelve do not warrant enhancement here.  So, the Court finds that these factors do not support an enhancement.

compared with the benefits initially pursued warrant a fraction of the attorneys' fees sought (Dkt. #48 at pp. 8, 28).   Defendant also argues that Class Counsel's requested fee is not commensurate with the value provided to the settlement classes (Dkt. #48 at pp. 8, 23).

The Court disagrees with both Class Counsel and Defendant.   Enhancement of the lodestar is not warranted—this case does not present an "extraordinary circumstance" requiring enhancement.   But reduction of the lodestar is not warranted either.   After considering the *Johnson* factors not already subsumed by the lodestar, paying particular attention to the results-obtained factor, the Court concludes that the lodestar is reasonable.

### 1.   Time and Labor Required

Class Counsel argues that this factor supports enhancement for two main reasons: (1) Class Counsel has been embroiled in this three-year litigation against a skilled defense team; and (2) after the lawsuit was filed, Defendant withdrew its domesticated presence in Texas, making this a cross-border case with unique labor considerations (Dkt. #46 at p. 25).   Class Counsel also states that having a paralegal review and identify tens-of-thousands of Spanish documents was laborious, but other than citing to one case, Class Counsel does not further explain the specific challenges of *this* cross-border litigation.   *See* (Dkt. #46 at pp. 18, 25).

This first *Johnson* factor does not support an enhancement.   The time and labor required is typically subsumed by the lodestar, and it was here.   *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 771 (5th Cir. 1996) ("The first factor already is included in the lodestar, and the district court must be careful . . . not to double count a *Johnson* factor already considered in calculating the lodestar . . . .") (internal quotation omitted) (alterations in original).   The only unique cross-border challenge Class Counsel explicitly identifies—needing a bilingual paralegal to review and identify tens-of-thousands of Spanish documents—was unquestionably laborious. And that is why the lodestar already included this time.   *E.g.*, (Dkt. #46, Exhibit 8 at pp. 74, 113–

16

14).   To count this as grounds for an enhancement would result in "impermissible double counting."  *See Saizan*, 448 F.3d at 800.

### 2.   Novelty and Difficulty of the Questions

Class Counsel asserts that this situation—class treatment arising from a manufacturing-defect theory—is novel, since class certification of manufacturing defects are not typical (Dkt. #46 at p. 25).  Because of this, and because of the fact that these issues would still have to be tested in dispositive motions absent the settlements, Class Counsel argues that this factor supports a fee enhancement (Dkt. #46 at p. 26).

Defendant disagrees.  Defendant thoroughly distinguishes this case from *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942 (E.D. Tex. 2000), which Class Counsel cited for support (Dkt. #48 at pp. 18–19).  The Court agrees with Defendant's analysis on this issue.  Though Class Counsel cites to *Shaw* for support several times in its fee application, Class Counsel does not explain how this case is anything like *Shaw*, which was a "completely novel" class action against a group of "multi-billion dollar, multi-national defendants" that several renowned experts testified was the "first of its kind and the first significant class action settlement involving a high-tech company."  91 F. Supp. 2d at 970.  Class counsel in *Shaw* "literally blazed a trail through [] uncharted territory"—Class Counsel here has not convinced the Court it has done the same.  *See id.*  Accordingly, the Court determines that this factor does not support an enhancement.

### 3.   Customary Fee

Class Counsel submits that an enhancement is necessary because the lodestar was calculated using the firm's historic rate despite the three-year delay in compensation (Dkt. #46 at p. 27).  Defendant does not appear to contest this factor.  *See generally* (Dkt. #48).  But in addressing Class Counsel's hourly rate in the Court's lodestar calculation, the Court concluded that Class Counsel's submitted hourly rates, while reasonable, already fell on the higher side of

the accepted range. *See supra* Section I.A.  Accordingly, no enhancement is warranted under this factor, as the lodestar was already calculated with a reasonable rate when viewed in current, rather than historic, terms.

### 4.   Contingency Fee and the Undesirability of the Action

Class Counsel extensively briefs these factors, discussing in detail the risks of contingent-fee cases like this one (Dkt. #46 at pp. 28–30).  Class Counsel argues that the sixth *Johnson* factor, the "'contingent nature of a suit[,]' supports the use of a multiplier."  (Dkt. #46 at p. 28) (quoting *Graves v. Barnes*, 700 F.2d 220, 222 (5th Cir. 1983)).  Class Counsel also ties the fact that this is a contingent-fee case to its argument that the undesirability of this case supports a multiplier, as Class Counsel spent years prosecuting a difficult class action with a substantial risk of non-recovery throughout (Dkt. #46 at p. 29).

Defendant points to the Supreme Court's decision in *City of Burlington v. Dague*, 505 U.S. 557 (1992), arguing that the nature of a contingent-fee arrangement is already accounted for in both the lodestar calculation and in an attorney's decision to take on any case (Dkt. #48 at pp. 19–20).  As Defendant puts it, "Plaintiffs' attorneys do not deserve to be compensated more than once simply for doing their job" (Dkt. #48 at p. 20).

The Court agrees with Defendant—this factor does not support an enhancement.  As Defendant points out, "[t]he Supreme Court has barred any use of the sixth [*Johnson*] factor." *Walker v. U.S. Dept. of Hous. & Urban Dev.*, 99 F.3d 761, 772 & n.13 (5th Cir. 1996) (citing *Dague*, 505 U.S. at 567; *Shipes v. Trinity Indus.*, 987 F.2d 311, 323 (5th Cir. 1993)); *see also Gurule v. Land Guardian, Inc.*, 4:15-CV-03487, 2017 WL 6761821, at *7 (S.D. Tex. Oct. 24, 2017), *aff'd*, 912 F.3d 252 (5th Cir. 2018) ("this factor cannot be used to justify an upward departure in a fee award.").  Class Counsel does not explain how this case falls outside that rule.

Nor does Class Counsel explain how this case was undesirable except by referring back to the contingent fee and the novelty of this case—both factors that the Court has already determined do not support and enhancement here.   Accordingly, the undesirability factor does not support an enhancement.

### 5.   Results Obtained

"Where 'a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.   This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith.'"  *Saizan*, 448 F.3d at 800 (quoting *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1048 (5th Cir. 1998)).   Indeed, the Court "*must* consider the plaintiff's degree of success to determine whether the lodestar is excessive."   *Combs*, 829 F.3d at 394 (emphasis added).

While the Court considers all of the relevant *Johnson* factors in determining whether to enhance or reduce a fee award, the degree of success obtained is the "'most critical factor' in determining a reasonable fee . . . ."   *Id.* (quoting *Hensley*, 461 U.S. at 436).   And "*Hensley*'s mandate that courts consider the limited nature of a plaintiff's success applies to all cases."   *Id.* No "precise rule or formula" exists in determining how to reduce the lodestar to account for limited success; and the Court "necessarily has discretion in making this equitable judgment."   *Hensley*, 461 U.S. at 436–37.

Class Counsel argues that the results-obtained factor weighs heavily in favor of enhancement (Dkt. #46 at p. 31).   Class Counsel asserts that it secured "substantial benefits for tens of thousands of class members that collectively own hundreds of thousands of toilet tanks, including: cash reimbursement of up to $300 per tank replacement; cash reimbursement of up to

$4,000 for property damage; and non-monetary protections" (Dkt. #46 at p. 30).   These non-monetary protections include "an independently administered replacement program, a lengthy extension of warranty that includes reimbursement for replacement costs and not merely product, and modification of releases originally requiring a complete waiver of warranty to now provide a five-year warranty" (Dkt. #46 at pp. 31–32).

Defendant vigorously disputes this critical factor, arguing that it supports reduction, not enhancement, of the lodestar.  Defendant submits that while the settlements were fair and adequate, they did not provide most of the relief sought in Plaintiffs' complaints (Dkt. #48 at p. 22). Specifically, Defendant claims that Plaintiffs gave up their claims for treble and punitive damages, were not refunded the purchase price of their tanks, and received relatively small monetary awards for the class (Dkt. #48 at p. 22).  Defendant asserts that the lodestar should be reduced as follows to account for the results obtained compared to the relief sought:

- For the 2011 Settlement Class, which was severed to create Case No. 4:19-CV-00248:

    o Defendant argues that Class Counsel is entitled to 6.06% for any reasonable and necessary work, billed at a reasonable hourly rate, for work from October 2016 through January 17, 2018;

    o Defendant argues that Class Counsel is entitled to 6.25% for any reasonable and necessary work, billed at a reasonable hourly rate, for work from January 18, 2018, through November 19, 2018; and

    o Defendant argues that Class Counsel is entitled to 11.76% for any reasonable and necessary work, billed at a reasonable hourly rate, done from November 19, 2018, through June 15, 2019.

- For all the newly settled claims that remained pending in the original action, Case No. 4:17-CV-00001:

    o Defendant argues that Class Counsel is entitled to 3.08% of the fee award requested.

(Dkt. #47 at pp. 8–12).

20

Defendant's calculations appear to be a product of Defendant looking at the aggregate number of tank models identified in Plaintiffs' complaints, determining all potential classes that could have come from these tank models from the years Plaintiffs identified in their complaints, and then dividing the number of settled claims by the aggregate number of potential classes to determine the percentage of work that benefited the successful class members. *See* (Dkt. #47 at pp. 8–12).  Defendant argues that this is the proper method to calculate the lodestar to ensure that Class Counsel's fee award only reflects the work done on successful claims (Dkt. #47 at p. 8).  The Court is not persuaded.

Defendant's argument is effectively that the lodestar should be reduced because Class Counsel did not secure every mode of relief requested in Plaintiffs' complaints.  Defendant does not point to hours or tasks billed by Class Counsel in pursuit of futile goals that conveyed no value to the classes, instead simply assuming—based on Defendant's own contrived ratios—that "[m]ost of the work Plaintiffs' attorneys did prior to the first settlement was for the benefit of all putative class members' claims regarding all models of toilet tanks made during all nine years of manufacture."  (Dkt. #48 at p. 8) (emphasis removed).  But simply because Class Counsel did not receive every bit of relief requested in Plaintiffs' complaints is not reason to reduce the lodestar.  As this Court addressed in *Tech Pharmacy Services, LLC v. Alixa Rx LLC*, 298 F. Supp. 3d 892 (E.D. Tex. 2017), without more, a plaintiff's recovery of less than they requested is not a reason to reduce the lodestar.  298 F. Supp. 3d at 908.

In reconciling the perceived tension between the principle that courts should not reduce attorney's fees based only on the amount of relief obtained and the principle that the degree of success obtained is the most critical factor in determining a fee award, Judge Ho explained:

> To be sure, not every attorney task will ultimately pay off for the client, even amongst the most conscientious of counsel.  A legal theory might seem genuinely

promising at the outset, but ultimately bear no fruit. Attorney time may be reasonably spent, even if it does not actually result in client value. . . . The overarching question that courts should ask in such circumstances is whether the attorney expended the time in a good faith pursuit of value for the client—or was instead engaged in churning attorney fees.  If the former, the time may be awarded, even though it ultimately proved fruitless.  If the latter, the churned time should be denied.

*Gurule v. Land Guardian, Inc.*, 912 F.3d 252, 262–63 (5th Cir. 2018) (Ho, J., concurring).

Defendant's suggested solution muddies these principles.  Class Counsel's work was certainly done in good faith—Defendant does not argue to the contrary.  Nor does Defendant assert that Class Counsel seeks fees for wasted time spent on the issues of punitive damages or treble damages after Plaintiffs' dropped their claims for them.  *Cf. id.* at 263 (Ho, J., concurring) ("If an attorney cannot explain how time was spent in the good faith pursuit of client value, then a district court would be right not only to reduce the fee devoted to a wasted task, but to eliminate the fee altogether.").  Indeed, Defendant assumes the inverse, claiming that the lodestar must be reduced because the work Class Counsel "did *prior* to the first settlement was for the benefit of all putative class members' claims . . . ."  (Dkt. #48 at p. 8) (emphasis added).  Even if this assumption were true, the work was still done "in a good faith pursuit of value for the client," meaning "the time may be awarded, even though it ultimately proved fruitless."  *Id.* (Ho, J., concurring).  And the work done did not prove fruitless—it resulted in two settled classes receiving a host of monetary and non-monetary benefits they would not have received but for Class Counsel's diligent work. *See* (Dkt. #46 at p. 30).

Also, Defendant's formula does not properly consider the reality that when cases "involve a common core of facts or will be based on related legal theories . . . [m]uch of counsel's time will be devoted generally to the litigation as a whole . . . ."  *Hensley*, 461 U.S. at 435.  And the Court finds that a reduction of the lodestar would not be equitable given this reality—Class Counsel's

fees should not be reduced for work that ultimately proved fruitful for multiple classes simply because Plaintiffs' complaints envisioned other potential classes or treble damages.

The Court further finds that the base lodestar is equitable despite Defendant's argument that the fees sought by Class Counsel only constitute a fraction of the results obtained for the class, which Defendant estimates to be a little more than $500,000.00 (Dkt. #48 at p. 22).  First, as Class Counsel notes, Defendant's projection of monetary value is hardly certain at this stage (Dkt. #46 at p. 31).  Second—and most importantly—"there is no *per se* requirement of proportionality in an award of attorney fees."  *Gurule*, 912 F.3d at 259 (quoting *Combs*, 829 F.3d at 396).

In *Gurule*, the Fifth Circuit affirmed the district court's fee award despite the award being *thirty-three times* the successful plaintiff's net recovery.  *Id.*  In affirming the lower court's fee award, the Fifth Circuit noted that despite this "eyebrow-raising" proportion, the district court had not abused its discretion merely because the fee award was disproportional to the recovery.  *Id.* Instead, the Fifth Circuit emphasized the district court's leeway in determining a fee award given its "superior understanding of the litigation."  *Id.*  Here—even accepting as true Defendant's assertion that the settled classes received around $500,000.00 in benefits—Class Counsel's fees are only 8.67 times the class's monetary benefit.  This is far less startling than the fee award affirmed by the Fifth Circuit in *Gurule*, which was thirty-three times the successful plaintiff's net recovery.

Though the Court finds that the results-obtained factor does not support a reduction of the lodestar, the Court also finds that it does not support enhancement as Class Counsel argues. Though the Court acknowledges the benefits Class Counsel secured, lodestar enhancements must be rare to ensure that fee awards do not result in a windfall to attorneys.  *Combs*, 829 F.3d at 393. Even "excellent results should usually result only in 'a fully compensatory fee'—the lodestar."  *Id.*

(quoting *Hensley*, 461 U.S. at 435).  This is not an extraordinary case warranting enhancement like *Shaw*, where the attorneys "literally blazed a trail through [] uncharted territory."  *See supra* Section II.2.  And as Defendant points out, Class Counsel did not secure treble damages, punitive damages, or a refund of the purchase price for the settled classes as Plaintiffs' complaints originally sought.  Accordingly, the results-obtained factor neither supports enhancement nor reduction of the lodestar.

### III.    Litigation Expenses and Costs

Class Counsel also requests reasonable litigation expenses from Defendant in accordance with the terms of the settlement agreements (Dkt. #46 at p. 15; Dkt. #46, Exhibit 7 ¶ 43).  Class Counsel states it is entitled to reimbursement of $373,476.05 in litigation expenses, which were all reasonably and necessarily incurred (Dkt. #46 at p. 33).  Defendant does not dispute that it has agreed to pay reasonable litigation expenses up to $500,000.00, but it challenges Class Counsel's request for $373,476.05 in litigation expenses on grounds that several of the expenses are excessive or not attributable to the settlement classes, incorporating by reference its prior specific objections from the mooted briefing (Dkt. #47 at p. 16 & nn. 26–27).

Litigation expenses and administrative costs like consulting expert fees, transportation, meals and lodging, in-house and outsourced photocopying, research, court reporting fees and deposition transcripts, overnight courier services, postage, and other services that are necessary and reasonable to prosecuting and settling a class action are reimbursable.  FED. R. CIV. P. 23(h); *see also Erica P. John Fund, Inc. v. Halliburton Co.*, 3:02-CV-1152-M, 2018 WL 1942227, at *14 (N.D. Tex. Apr. 25, 2018).  Litigation expenses expended in support of only unsuccessful claims may not be reimbursed.  *Id.* at 16.  The Court "has broad discretion in taxing costs."  *Migis*, 135 F.3d at 1049.

Based on its own independent review of Class Counsel's submitted litigation expenses (Dkt. #46, Exhibit 2) and on Defendant's objections to several of the expenses (Dkt. #27, Exhibit 1 ¶¶ 14–20),[8] the Court finds that the following litigation expenses are not reimbursable because they were not necessary or reasonable to prosecuting and settling these class actions:

| Description | Reason for Excluding | Amount |
|---|---|---|
| Cook's National (Invoice 30241) | This invoice was billed to State Farm, and there is not proper documentation showing how this was related to the work done in this case | $571.97 |
| EPIQ (Invoice M-183577) - Deposition of Shawn Casper | Class Counsel does not rebut Defendant's declaration that Shawn Casper's work went towards the broader, potential classes put forward by Plaintiffs' complaints that Class Counsel never secured settlement for. | $678.00 |
| Epiq (Invoice M-233842) - Deposition of Shawn Casper | Class Counsel does not rebut Defendant's declaration that Shawn Casper's work went towards the broader, potential classes put forward by Plaintiffs' complaints that Class Counsel never secured settlement for. | $398.60 |
| Square Cow Movers | Not properly documented to show how this expense was related to prosecuting and settling these class actions | $472.50 |
| | | **TOTAL: $2121.07** |

The Court finds that the remaining expenses were reasonable and necessary for successful prosecution of this case, as detailed both by the billing and the declarations of Class Counsel

---

[8] Because Defendant simply incorporated by reference its objections to these expenses without considering the settlement of all the Remaining Claims, many of its objections are no longer relevant. *Compare* (Dkt. #27, Exhibit 1 ¶ 15) ("They also include transport and storage fees for Plaintiff Mark Fessler, who is not in the settlement class."), *with* (Dkt. #46, Exhibit 4 at p. 5) ("Mark and Amber Fessler: Defendant agrees to pay the Fessler Plaintiffs $4,599.78 in exchange for a full release of all individual claims.")

(Dkt. #46, Exhibit 3; Dkt. #46, Exhibit 7 ¶¶ 37, 43–48).  After the reductions outlined above, Class Counsel is entitled to $371,354.98 in litigation expenses and costs, which the Court finds were reasonable and necessary for successful prosecution and resolution of this hard-fought, three-year long battle.

## CONCLUSION

It is therefore **ORDERED** that Class Counsel's Motions for Approval of Award of Attorneys' Fees and Request for Reimbursement of Litigation Expenses (Dkt. #46; Dkt. #275) are hereby **GRANTED in part** and **DENIED in part**.  Class Counsel is awarded **$4,333,949.50** in attorneys' fees and **$371,354.98** in litigation expenses and costs.  As reflected in the Court's order granting Plaintiffs' Unopposed Motion to Amend Final Order and Judgment (Dkt. #55), the parties shall submit a proposed Amended Final Order and Judgment within **ten (10)** days.

**SIGNED this 24th day of April, 2020.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE